MAYFIELD and another, Plaintiffs in error, vs. THE STATE,
Defendant in error.

*April 9—April 26, 1910.*

*Criminal law: Assault by several persons: Continuous purpose: Lia-
bility of persons aiding: Separate trials: Evidence: Admissions:
Instructions to jury: Immaterial errors.*

1. Where, in pursuance of a common design to compel an accused
   person to confess, several others took part in an assault upon
   him, and the unlawful purpose and action were continuous, al-
   though not all were present during the whole time, all those
   aiding, encouraging, or inciting the assault at or immediately
   prior to the time of its commission, and who were present when
   it was committed, are liable as principals.
2. In such a case it is within the discretion of the trial court
   whether to grant separate trials.
3. Where several persons are prosecuted for assault with intent to
   do great bodily harm or for assault and battery, even in the ab-
   sence of proof of conspiracy admissions of one defendant may
   be received against him if the court then rules that this is the
   only purpose for which they are received and later instructs
   the jury that the admission of one defendant is not evidence
   against any other defendant but may be considered as against
   the person making the admission.
4. Where several persons are prosecuted for assault with intent to
   do great bodily harm but are convicted of assault and battery
   only, alleged errors in the instructions relative to the greater
   offense are immaterial.

ERROR to review a judgment of the circuit court for Mon-
roe county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

For the plaintiffs in error there was a brief by *Masters,
Graves & Masters* and *G. M. Perry,* and oral argument by
*Mr. Perry.*

For the defendant in error there was a brief by the *At-
torney General* and *Thorwald P. Abel,* district attorney, and
oral argument by *Mr. Abel.*

TIMLIN, J.   The plaintiffs in error, hereinafter called de-
fendants, were, with three others not before this court, pro-

ceeded against for assault with intent to do great bodily harm
upon one Allen, and convicted of assault and battery.    De-
fendants contend that the court erred (1) in refusing to grant
them a separate trial; (2) in refusing to discharge the de-
fendants; (3) in refusing to require the state to elect; (4) in
rulings upon evidence; (5) in giving and refusing instruc-
tions.

Allen was a man about fifty-seven years of age, a vagrant
who drifted into the village of Cataract and was hanging
around *Mayfield's* saloon and sleeping in his barn, where
Baumel and Johnson, who also slept in this barn, reported
that there was stolen from them while they slept a watch and
some money.    According to testimony on the part of the
state, *Mayfield* with others came into Masterson's saloon,
found Allen there.    *Mayfield* accused him of this theft, laid
hands on him, shook him.    Masterson forbade anything fur-
ther in his saloon, whereupon *Mayfield* took Allen out into
the street and said: "Let us kill the ————.    Let us make
him dig up."    The others who were with *Mayfield* then as-
saulted and beat Allen for the purpose of making him confess.
*Hebron* from a nearby hotel heard this fracas in the street and
came over.    *Mayfield* retired some little distance.    Allen by
this time was severely beaten by several men in this crowd
and lay on the ground, while the blows which were admin-
istered to him and the oaths and vulgar language could be
heard for a distance.    Finally Allen called for *Mayfield* and
said he would confess to him.    *Mayfield* came in response
and said: "If you have got the watch give it up; . . . tell
where it is, and I will see that the boys won't hurt you."
Allen then went to the barn with the crowd, including *May-
field* and *Hebron,* and showed them where the watch which
he had stolen was secreted, and *Mayfield* then urged him to
give up the money and threatened him with violence, and then
leaving Allen in the hands of the others of the assaulting
party left the barn and commenced to look elsewhere for the

money. The assaults upon Allen in the barn continued, *Hebron* remaining there. After a little time *Hebron* left, was absent a few minutes, and returned. The attacking party placed a rope around Allen's neck and threatened to hang him, also to drown him, and pulled on the rope. While the rope was around his neck *Hebron* and one Davis stripped Allen of his shoes and clothing, except a shirt and vest. Allen was bleeding, bruised, and exhausted, and his condition appeared alarming, when one of the assaulting party said: "Is the son-of-a-b—— dead?" *Hebron,* who is a physician, felt of and timed Allen's pulse, and said, "He is all right." After this Allen was taken down from the barn by the attacking party into the street and it was said they were going to drown him. *Hebron* went along with them at a little distance behind, and soon after they reached a point in the street near the saloons *Mayfield* found the missing money in the sand or dust of the street. This was three hours or more from the time they first attacked Allen. They then let Allen go, brought him before a justice of the peace the next morning, had him fined $1 for something, and he left. *Hebron* held a light part of the time while the other members of the party were badgering or assaulting Allen and he also afterwards admitted to one Bussby participation in the affair. *Hebron* also took around an agreement in writing the next morning to the effect that the assaulting party should all stand together in the case and pay the fine of any one who was found guilty.

There is confessedly much evidence to the contrary of the above, but the foregoing was before the jury, and they must have found it to be true when they convicted the defendants. The learned counsel for the defendants first considers that there were three several and separate crimes, one in the saloon, one in the street, and one in the barn, and that each of the accused must be adjudged by his presence at or participation in either of these affrays, and in this way has worked

out quite an ingenious argument in favor of his clients to support his first three assignments of error. But we cannot take this view of the evidence. The state had the right to treat the whole transaction, which was continuous in its object and purpose and in its restraint upon Allen and in its unlawful acts, as one transaction. The persons associated in this crime did not all strike or assault Allen, and the blows and assaults were interrupted or suspended from time to time for the purpose of urging Allen to confess or hearing his confession or moving him from place to place, but the continuity of unlawful purpose and action persisted throughout the entire transaction. *Hilmes v. Stroebel,* 59 Wis. 74, 17 N. .W. 539; 12 Cyc. 186; *Rhinehart v. Whitehead,* 64 Wis. 42, 24 N. W. 401. It was discretionary with the trial court under these circumstances whether to grant a separate trial. *Emery v. State,* 101 Wis. 627, 78 N. W. 145. We do not think there was any abuse of that discretion shown.

The principal reason urged in support of the assignment of error relating to rulings on evidence is that alleged confessions or admissions of *Hebron* could not be competent as against *Mayfield,* nor those of Young against either, but that is answered by the fact that the court, by ruling and instruction to the jury, limited the evidence of admissions to the person making the admission, and ruled that such admission should not be considered in determining the guilt or innocence of any other defendant.

The instructions relative to the offense of assault with intent to do great bodily harm need not be considered, because the defendants were acquitted of that offense by being found guilty of assault and battery.

The case was fairly submitted to the jury upon instructions substantially to the effect that if any one of the defendants did assault, beat, bruise, and injure Allen, and either or any of the other defendants were present aiding, encouraging, or inciting this assault, the latter were aiders and abettors

and liable as principals, but that mere presence at such an assault did not render one liable who had done no act to countenance or approve what had been done by those unlawfully engaged. We think there was evidence from which the jury might properly infer that both *Mayfield* and *Hebron* aided and abetted the unlawful assault upon and battery of the man Allen, and that no substantial error intervened in the proceedings below, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.