# ROYSTON W. JONES

## *vs.*

# THE STATE OF MARYLAND.

*Bastardy: calculations of man as to cost of care for child;*
*admissible in evidence. Evidence in rebuttal.*

Where a man enters into a calculation with a pregnant
woman, with whom for many months he had had sexual inter-
course, as to what it would cost to support the illegitimate child
for 12 years, and offers to pay her a sum of money therefor, it
is strong evidence that he is the father of the child, and the
original paper containing the calculation is admissible in evi-
dence in corroboration of the evidence against him in proceed-
ings for bastardy.                                    p. 145

In bastardy proceedings, evidence tending to show that the
mother had illicit relations with other men must be confined to
a period of time when it would have been possible for the child
in question to have been the result of such relations.    p. 147

The admission or rejection of evidence in rebuttal rests
largely in the discretion of the court.              p. 148

*Decided January 16th, 1918.*

Appeal from the Circuit Court for Harford County.
(HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*S. A. Williams* (with whom was *Thos. H. Robinson* on the brief), for the appellant.

*Philip B. Perlman, Assistant Attorney General* (with whom was *Albert C. Ritchie, the Attorney General; Walter R. McComas, State's Attorney for Harford County,* and *Harry S. Carver,* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

Royston W. Jones, the appellant, was indicted in the Circuit Court for Harford County for bastardy. The indictment, which was found on the 16th day of May, 1917, charged that the traverser did on the 15th day of July, 1916, at the county aforesaid, unlawfully beget on the body of Mary M. Cunningham a female illegitimate child, of which child the said Mary was afterwards delivered, to wit, on the 10th day of April, 1917; that said child was born alive, and was still living with its mother in the county aforesaid at the time the indictment was found. To this indictment the traverser pleaded not guilty. Issue was joined upon the plea and the case was tried before a jury which, on the 25th day of May, 1917, by their verdict found the traverser guilty.

The Court on June 18th, 1917, ordered that: "The traverser give bond to the State of Maryland in the penalty of $500, conditioned to pay $10.00 per month, accounting from this date, for the maintenance of the child, to the mother or person having said child in custody, until said child reaches the age of 12 years, or during the life of same if she should die before reaching 12 years of age; and to pay the further sum of $40.00 to the mother on account of expense incurred, and further to pay the reasonable funeral expenses of said child should she die under the age of 12 years; and in default of such bond it is further ordered that he be and is hereby committed to the House of Correction for two years, or until said bond be given." This order was passed under the Act of 1912, Chapter 163 (Article 12, section 5, 3rd Volume of

the Code). The appeal before us was taken by the traverser
from this judgment or order.

It is the settled law of this State that in cases of this kind
"the offense which the law punishes is fornication, which
term, as here used, means unlawful sexual intercourse which
results in begetting a child, and the consummation of which
is established by the birth of the child." *Sheay* v. *State*, 74
Md. 52.

There was great conflict in the evidence, and during the
course of the trial 29 bills of exceptions were reserved by the
traverser to rulings of the Court upon questions of evidence.
Where a number of the exceptions may be considered together
they will be arranged in appropriate groups and will not be
separately discussed. We do not find it necessary in order
to dispose of the exceptions to discuss at length the evidence,
but will deal with it according to its general purport and
effect.

Margaret M. Cunningham, a single woman, in 1914 was
living at Highland Station, in Harford County, and was
employed by Gailey Bros. & Orr, who conducted a store and
postoffice at that place. The station was on the line of the
Maryland & Pennsylvania Railroad, and the traverser, who
was engaged in farming, shipped milk from that point. She
became acquainted with him in the Spring or early Summer
of 1914. She testified that during the Fall and Winter of
1914 and 1915 the appellant visited her frequently, and that
in the Spring of 1915 they became engaged to be married,
and that two or three months after this engagement he had
sexual intercourse with her, and that this improper relation
continued from the Summer of 1915 until the last of July
or the first of August of that year, when they were discon-
tinued and not resumed, because she had learned from Dr.
Famous, whom she had consulted, that she was pregnant.
She testified at the first opportunity she had after she had
consulted Dr. Famous she informed the appellant of her con-
dition, and he advised her to wait a little while, and if she

was pregnant he would marry her. She further testified that the traverser came to see her at the home of Mrs. Deavers, where she boarded, on the night of November 11, 1916, and she gave the following evidence as to a portion of that interview: "He asked me how much money it would take to support the child. We counted it up, and he said the total amount for 12 years at $2.50 a week was too much. I told him I would have to do with one-half to provide for the child, which was $780 for six years. He said he would do that at $2.50 a week. We counted it up. He was there and helped to count it up. After we counted up what the amount would be at $2.50 a week for 12 years, he said that was too much. I told him if he would help me in the support of the child, and if he would pay $780, which would provide for it for six years, if that would be satisfactory, and he said it would, and he wrote down that he would pay that much."

The first and second exceptions were taken to the action of the Court in admitting in evidence this paper, made in the presence of the traverser and which he had helped to prepare, as testified to by the prosecutrix, and the third exception was to the overruling of a motion to strike out a certain answer referring to calculations which the witness had made at the time the paper was prepared. These rulings were correct. If a man enter into a calculation with a pregnant woman, with whom for many months previous he has had repeated acts of sexual intercourse, as to what it would cost to support an illegitimate child for 12 years and then offers to pay her $780 to provide for the child for that time, these facts would be strong evidence that he was the father of the child, and the original paper, containing the result of the calculation made under the circumstances stated, was properly admitted in corroboration of the witness' testimony.

The fourth, fifth, sixth, seventh, eighth and ninth exceptions were reserved to the action of the Court in admitting in evidence certain letters written by the traverser to Miss Cunningham. These letters were properly admitted. It is un-

necessary to transcribe them in this opinion, but they tend to show the intimate character of the relations which existed between the parties.  3 *R. C. L.,* sec. 44.  The letter objected to in the ninth exception we regard as being of great probative value in view of the testimony of the appellant that his illicit relations with the prosecutrix ceased in the winter of 1916.  This letter was not dated, but it came in an envelope stamped July 12, 1916.

Miss Cunningham, on cross-examination, was asked if she had ever been pregnant before, and if she did not know the signs of pregnancy, and she answered both questions in the negative.  Counsel for the appellant then made the following offer: "For the purpose of contradicting this witness and of testing her credibility, as well as showing her knowledge of the signs of pregnancy, counsel for the traverser then proposed to show by her that on the 2nd day of March, 1917, in the presence of the Court Stenographer, Messrs. McComas and Carver, Royston W. Jones and S. A. Williams, and of Lewis J. Williams, the Justice of the Peace before whom her evidence was being taken under the statute in this case, this witness testified under oath that she had been pregnant in January, 1914, as the result of improper relations with Guy Scarborough, and that he (Scarborough) took her to Dr. Arthur in January, 1914, to have an operation performed, that the doctor performed some kind of an operation, she did not know what kind."  The State objected to this offer of proof, and its objection was sustained, and this ruling constitutes the tenth exception.  It is said in 3 *R. C. L.,* sec. 44, that: "Evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten, but evidence tending to show that she had illicit connection with other men, and interrogatories made with a view to elicit that fact from her must be confined to a period when in the course of nature it would have been possible for the child to be the result of such intercourse." See elaborate note to *Weatherford* v. *Weatherford,* 56 Amer-

ican Decisions, 206, and to *State* v. *Broderick,* 14 L. R. A.,
New Series, 734. It is said in *Poe on Pleading and Practice,* 2nd Volume, section 277, that: "Although, in practice,
great latitude is permitted on cross-examination, still a witness can not be cross-examined upon irrelevant matter for the
purpose of impeaching him; and when immaterial evidence
has been thus brought out, it is not competent for the party
eliciting it to contradict it, but he will be bound ·by the
answer of the witness." *Sloan* v. *Edwards,* 61 Md. 89.
Under the authorities cited it would seem clear that it was
not competent to prove as a fact that the prosecutrix had
been pregnant in 1914, as the result of improper relations
with Guy Scarborough. The evidence proposed to be offered.
was intended to introduce in evidence her admissions as to a
matter which we think was wholly collateral. But we do not
think the appellant was injured by this ruling, especially as
it was testified by the traverser, and not contradicted by the
prosecutrix, that "she told me that she had been in that condition before in 1914."

The eleventh exception was taken during the examination
of Mrs. Wyllsey. She testified that at a meeting in York,
the traverser had offered the prosecutrix about 152 dollars,
and that this offer was refused upon the advice of an attorney
whom she had previously consulted. She was then asked
this question to which the traverser objected, and his objection was overruled: "In addition to the advice of your
counsel Mr. Weaver, we want to know why the money was
not accepted?" We can see no merit in this exception, as
the explanation of the refusal to accept the money, as appears
by the answer was properly admitted. There was no error
in the ruling on the twelfth exception. The witness, Mrs.
Wyllsey, had testified that in the same conversation referred
to in the eleventh exception, the appellant said that he would
bring 24 men who would testify as to her character; and
that she was not what she should be. "Q. In what respect?
A. I don't know; ask him. Q. I want to know what he

said, whether he indicated in what respect they would show what her character was? A. No more than any one would naturally suppose; I don't think you are to give your supposition in your answer. Q. I want to know what you understood by it? The Court upon objection refused to allowed the question to be answered. The witness gave to the jury what the appellant said, and it was for them to say what he meant, and her understanding of the meaning he intended to convey was properly ruled to be inadmissible.

The appellant was not injured by the ruling in the thirteenth exception, as the answer of Doctor Famous merely tended to prove an undisputed fact in the case, viz: the pregnancy of Miss Cunningham. We find no error in the ruling on the fourteenth exception, for the reasons stated in discussing the tenth exception.

In the fifteenth, sixteenth, seventeenth and eighteenth exceptions it was proposed to offer evidence tending to show that Miss Cunningham had been intimate with other men in 1914 and 1915. This evidence was inadmissible under the rules of law stated above, and was properly excluded. Such evidence was, however, afterwards offered, without objection in the cross-examination of the traverser.

The nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth exceptions were reserved to the admission of testimony offered by the State in *rebuttal.* The admission or rejection of such evidence is a matter resting largely in the sound discretion of the Court. The rule as stated by Mr. Poe in his second volume on *Pleading and Practice,* section 287, is: "When the defendant has concluded his testimony, the plaintiff, in those cases where the burden of proof rests on him and where in chief he has accordingly gone into his whole case, is entitled to introduce what is called rebutting evidence—that is to say, evidence in regard to such new points and questions as were first opened by the defendant's evidence. The rule is that the plaintiff will be required to go fully into his own case-in-

chief on those issues as to which he holds the substantial affirmative, and where, therefore, the burden of proof rests on him; and hence, in reply to the case made by the defendant, he will ordinarily be limited to what is strictly rebutting evidence. Still, it is not always easy to draw the line between what is rebutting evidence and what is evidence properly adducible in chief. The subject is one which is addressed to the sound discretion of the Court; and the appellate Court will not reverse for an error on this point, unless the ruling of the Court below was both manifestly wrong and substantially injurious. Indeed, as a general rule, in such cases no appeal will lie." We find no error under the rules stated in any of these rulings. Some of this evidence had reference to new matters testified to by the appellant, and of which the prosecutrix had no knowledge, if her evidence be true; and some of it to special matters of defense which the State could not anticipate. The twenty-ninth exception is without merit. The evidence that Miss Cunningham had $100 in bank was of little or no importance in the case.

After the best consideration we are able to give the case, in our opinion there was no error of law committed by the trial Court that would justify us in reversing the judgment and it will, therefore, be affirmed.

*Judgment affirmed, with costs.*