WALDO NEWCOMER ET AL. *v.* C. WILBUR MILLER
ET AL., RECEIVERS.

[No. 47, January Term, 1934.]

*Decided April 25th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Charles Markell,* for the appellants.

*David G. McIntosh, Jr.,* with whom were *H. Courtenay Jenifer* and *J. Rieman McIntosh,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellants are owners of all the stock of a corporation, bought in by them at an auction sale of collateral security for debts owed to them, and, in a proceeding in which receivers were appointed for assets of the corporation, they filed a petition for leave to examine the corporation's books. The receivers answered, resisting the allowance of it, the petition was denied, and the appeal is from the denial. The receivers were appointed in a consensual proceeding, instituted in the name of the wife of the petitioners' debtor; her husband, who was president of the corporation, answered and consented in its name; and the husband and the wife's counsel were appointed receivers. Subsequently all the property of the corporation was sold by the receivers to the wife, and the sale was finally ratified in the absence of exceptions to it, and for the conclusion of the proceeding there remains, subject to the controversy now here on appeal, only the accounting and distribution of the proceeds. The petitioners question the validity of debts claimed for the wife, and com-

plain of the whole proceeding as a maneuver of their debtor to hinder recovery on his debts, and to retain the property for his own benefit; and inspection of the corporation's books is applied for as a means of testing these claims advanced against the assets as superior to the claims of the petitioners as stockholders, and for protection of the interests of the petitioners generally.

The receivers, the appellees, have filed a motion to dismiss the appeal, and a first question is whether the petitioners have a right of appeal from such action of the court at any time, and, if at any time, whether the order was such a final one as would permit of appeal at this stage of the case. Objection is made by the receivers that there was no auditor's account of the proceeds of sale yet stated and made subject to exceptions, nor was there any other proceeding open and to which the application for examination of the books would be relevant.

There is no dispute on the essential facts so far alleged. C. Wilbur Miller and his wife owned jointly all the stock of a Worthington Valley Company, which held 1,700 acres of land, with improvements and equipment for a farm and a dairy. It was valued formerly at $800,000 and more. Miller was president of the company. He had for some time past been indebted to the two petitioners on promissory notes in amounts aggregating $1,500,000, and the stock of this company had, as stated, been pledged as collateral security, 600 shares with Newcomer, and 400 with the trust company. On June 29th, 1933, the bill in equity was filed in the name of Mrs. Miller, alleging that the corporation was indebted to her, and praying that receivers *pendente lite* be appointed for its assets, the answer was filed for the corporation by the husband, consenting to the receivership, and the husband and Mr. Anderson, who had filed the bill for the wife, were appointed receivers. The petitioners complain that knowledge of the fact that all the stock was then pledged for the husband's debts was withheld from the court, and that the pledgees were given no notice of the proceeding. On July

26th, 1933, the foreclosure and sale of the collateral occurred, and the petitioners and appellants then became owners of all the stock.

On August 10th, 1933, the receivers reported to the court a contract with Mrs. Miller, subject to approval by the court, to purchase all the assets of the corporation for $45,810.02, subject to existing mortgages of a total of $209,189.98, making the total purchase price $255,000. It was later reported that Mrs. Miller held a mortgage. The receivers valued the property at approximately $230,000, and testimony of three experts placed even lower valuations on it; and in one of its orders the court recited that the sale had been accepted only after consultations with the court on conditions and possibilities of sale. An order *nisi* required that exceptions be filed by September 25th, and, none having been filed, the sale was finally ratified on that day.

On the same day the petitioners filed a first petition for appointment of co-receivers because of opposition of the receivers to the petitioners' interest, and an advantage they would have in the contest of interests in the sole possession of information concerning all rights and claims, and because of need of the petitioners for protection; but the court, considering that there was nothing to be done except to distribute the proceeds of sale, found no need of additional receivers. The petitioners were, however, admitted as parties to the cause.

On the day after the dismissal of that first petition, it appears the petitioners wrote a letter to Mr. Anderson requesting permission to examine the books, and a second letter with the same request on November 7th, but received no answers because, as it happened, Mr. Anderson was confined to his home by sickness; and, having failed to obtain the permission sought, the appellants filed the petition now to be considered, that for an order for the examination, "to ascertain as nearly as possible the true financial condition of the defendant corporation and the amount of its assets and liabilities, and, in particular, the actual amounts due or owing

between the defendant corporation and C. Wilbur Miller and his wife." The receivers answered, resisting the allowance of the examination, and the court, after a hearing, announced a readiness to set aside the sale, and to discharge the receivers, if good ground should be shown, but concluded that, there being no attack on the previous orders, the proceeding that remained being only that of distribution of proceeds of the sale, and an allowance of examination of books having a tendency to delay and hinder the administration of the receivership, the petition should be dismissed.

The application here is not one for the production of books and papers by an adversary owner or possessor of them. However the receivers may stand in personal opposition to the applicants, they are as receivers entirely neutral custodians, and are to be treated as such. More accurately, the court itself is the custodian; the receivers holding for the court. *Day v. Postal Telegraph Co.,* 66 Md. 354, 368, 7 A. 608; *Blum v. State,* 94 Md. 375, 380, 51 A. 26. And the holding is not only for the direct use of the court and its receivers in the administration of the receivership, but also for the use and benefit of all parties in interest, including the applicants. *High, Receivers,* sec. 134; *Clark, Receivers,* sec. 768; *Smith, Receivers,* (2nd Ed.) (Tardy) 199; *Manning v. Securities Co.,* 242 Ill. 584, 90 N. E. 238. The applicants have had from the beginning an interest in the assets as pledgees and owners of the stock, conveyed to them as a means of repayment of large loans, and their interest is involved in a proceeding conducted by representatives of the pledgors, with the anticipated result of leaving the security good for nothing. They are, in fact, as the owners of the stock of the corporation, the only parties now having the ultimate legal interest in the books. They question the good faith of the receivership proceeding, charging fraud in it. There are no allegations of specific wrong to the rights of the applicants, and the purpose seems rather to be to subject to inquiry a proceeding in which their interests are affected, but in which they cannot now protect their

rights or even know what they may be, and are left dependent upon the care of their adversaries in interest. For fraud they might, of course, attack and reopen the proceeding so far as the fraud might have affected it. In this situation and for these purposes they must, in the opinion of this court, be given access to any information the books may contain. Whatever assurance the court might derive from the character of the receivers and its own supervision of their receivership, relegating the interests of the appellants to the initiative and fairness of their opponents in interest would not be a just arrangement. Inspection of the books may turn out to be without usefulness to the appellants, but the situation requires that they be given facilities for attending to their own interests, and the court should not be astute to anticipate lack of advantage for them in what they ask, especially when the relief is so easy.

Such an application is not one that has a place only at a particular stage of the proceeding, but one that may be filed at any stage of it. From the moment it appears that the proceeding involves claims antagonistic to those of the petitioners, an application for information for resisting those claims and advancing the interests of the petitioners, generally, is timely and in order. *Eschbach v. Lightner,* 31 Md. 528, 532. See *Miller, Equity Procedure,* 286, and *Pomeroy, Equity Jurisprudence,* sec. 205.

The right of any appeal, at any time, for a review of denial of the application, is contested on the ground that the action of the lower court is within the discretion of that court, and its judgment is to be preferred to some extent, at least, as settling the controversy. The few references in the authorities which support this argument have had to deal only with applications by holders of minor portions of the stock. *Chable v. Nicaragua Canal Co.* (C. C.) 59 Fed. 846; *Morgan's* case, 28 Ch. Div. 620; 2 *Machen, Corporations,* sec. 1103. But applications even by owners of all the stock might be opposed by considerations of convenience, and of justice to creditors, in weighing which the court must be

allowed discretion. The existence of a discretion does not in all cases prevent review, however. While absolute in some cases, and not open to review, in others discretion is reviewable. *Brown v. Hutzler Bros.,* 152 Md. 39, 46, 136 A. 30; *Scheffler v. Lee,* 126 Md. 373, 94 A. 907; *Chase v. Winans,* 59 Md. 475, 479; *Esterline v. State,* 105 Md. 629, 66 A. 269; *Jones v. State,* 132 Md. 142, 148, 103 A. 459; *Snowden v. State,* 133 Md. 624, 636, 106 A. 5; 2 *Poe, Pl. & Pr.,* sec. 287. The extent of discretion and the right of review differ according to the purpose of the discretion. Here the court is considering, not a mere regulation of order and progress in a proceeding in court, or in a matter in which the judge's close contact with the circumstances would give him an understanding preferable to that of judges on appeal, so that by reason of these or other circumstances it should defer to the judgment of the trial judge. It is considering an action which might have a much closer connection with essential justice. Exclusion from access to information might amount to exclusion of rights from a hearing, and it does not seem permissible to deny review on complaints of substantial wrong, as here.

As to the objection that the appeal is premature, it is true that, so far as the application may be regarded as seeking information for possible contest of claims to be allowed by the auditor, before the auditor has allowed any, the appeal would be premature. *Eschbach v. Lightner, supra; Miller, Equity Procedure,* 382, etc. But the appellants declare their purpose to be broader, as has been stated. They seek an opportunity of protecting their interests against a proceeding conducted by adversaries in interest, expected to leave no value in collateral security now owned by them, and the denial of access to information held by the court is a denial of the first step in that protection, whatever may be the attack, if any, afterwards found proper. The appeal is not based on a final settling of a disputed right of the appellants to substantial relief, but upon a theory of exclusion from an opportunity to ascertain the facts on which rights may be deter-

mined, an exclusion similar to that which results from the sustaining of a demurrer to a bill for discovery. And on that theory the action appealed from would seem to have the finality as to those rights, if there are any, which supports an appeal. We come to the conclusion that the appeal must now be entertained.

*Motion to dismiss appeal overruled, and order appealed from reversed, costs to be paid from the assets in the hands of the receivers.*