# DAY ET AL. *v.* STATE

[No. 33, October Term, 1950.]

*Decided November 15, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MAR-KELL, JJ.

*Louis E. Macht* for Gerald S. Day, appellant.

*Ernest L. Perkins* for Russell S. Lewis, appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom were *Hall Hammond,* Attorney General, *J. Bernard Wells,* State's Attorney for Baltimore City and *W. H. Maynard,* Deputy State's Attorney for Baltimore City, on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal by Gerald Sylvester Day and Russell Sinclair Lewis from sentences of death, imposed after a joint trial and conviction by a jury in the Criminal Court of Baltimore for the murder of a trackless trolley operator. Day was represented by counsel employed by his family; Lewis was represented by counsel appointed by the court.

On October 5, 1949, at about 11:15 P. M., Officer Gardner of the Baltimore City Police Department, at that time off duty, saw a trackless trolley car at the curb with all lights off at the intersection of Carey Street and Westwood Avenue in the city of Baltimore. He went there and saw two men standing on the curb side looking in an open window. He recognized one of the men as Gerald Day. He had some words with him as to his presence there, and Day ran off. The other, a man whom the officer did not then know, but whom he later identified as Lewis, then also ran off. The officer looked into the trolley, saw someone lying on the floor, and noticed blood

dripping out of the door. After an ambulance and other policemen arrived, he went into the trolley, found the driver stabbed, nearly dead, and a quantity of blood on the front platform. The driver was removed in the ambulance to a hospital where he was pronounced dead. Subsequently, in the early morning of the next day, Day was arrested, and later in the day, Lewis was arrested, both being taken on arrest to the Northwestern Police Station. After questioning, each of the appellants made statements. Their statements were first taken down by a police officer, then subsequently by a stenographer of the Supreme Bench in the presence of an assistant State's Attorney, and finally a joint statement was taken, all of which will be discussed later in this opinion. At the trial, four separate statements and part of the joint statement were admitted in evidence.

Petitions for severance were filed by each of the traversers on identical grounds, namely, that their interests were separate, that they had different counsel, and that the State had statements in its possession which, if offered and submitted in a joint trial, would be distinctly harmful and in violation of their rights guaranteed by the Constitution of the United States. These petitions were overruled and the joint trial then proceeded. During the course of the trial, the five statements were admitted, two by each of the defendants, and one, a joint statement, in all of which they contradicted each other. Each of the defendants admitted being present at the scene of the crime, that he knew the purpose of going to the trolley car was to rob the driver, but each accused the other of being the one who got in the car and, presumably, killed the operator. Each said that he, and not the other, remained outside and pulled the trolley pole from the wire so as to darken the interior of the vehicle. The court was advised at the time the motion for severance was made that these statements were to be offered, and it was obvious that if they were admitted, the only way the court could protect each traverser from the statements of the other against him was

to instruct the jury (which was done) that each man's statement was evidence only against him and not against the other. The question before us is whether, in a case such as this, that was sufficient protection, or, in other words, whether, where the court knew that would be the only protection, should it have granted the motion for severance, and was its failure to do so arbitrary and in violation of defendants' right to a fair trial and, if so, is it subject to review by us.

It has been generally held in this State that the granting or refusing of motions to sever is within the discretion of the trial court under all the circumstances of each case. In *Smith v. State,* 106 Md. 39, 41, 66 A. 678, it is said that it is "entirely" within the discretion of the trial court. As authority for this statement, the case of *U. S. v. Marchant,* 12 Wheat. 480, 6 L. Ed. 700, is given. In that case, in which the opinion was written by Justice Story on March 12, 1827, the history of the theory of severance is given to show that it was not a matter of right. It was so held, and, in conclusion, it was stated: "In our opinion, it is a matter of sound discretion, to be exercised by the court with all due regard and tenderness to prisoners according to the known humanity of our criminal jurisprudence." In *Gray v. State,* 173 Md. 690 (unreported), 195 A. 591, the general statement that severance is within the discretion of the trial court is made, and this case is cited as authority in the late case of *Jones v. State,* 185 Md. 481 at page 487, 45 A. 2d 350. In the last mentioned case, however, there was an indication that some circumstances might justify this court in reviewing the action of the trial court. In that case the court said that there was no intimation that the defense of the respective defendants was hostile, and it might be assumed that it was not the case, that the matter was in the discretion of the court, there was no abuse of discretion, and the action of the court was correct.

There are a number of matters which are in the discretion of the trial court, but it is not true that in all

of these matters there is no review. Thus, in a criminal case, where the question was whether the State might offer certain testimony in rebuttal, this court quoted Poe's *Pleading* and *Practice,* Vol. 2, § 287: "The subject is one which is addressed to the sound discretion of the court; and the appellate court will not reverse for an error on this point, *unless the ruling of the court below was both manifestly wrong and substantially injurious.* Indeed, as a general rule, in such cases no appeal will lie." (Emphasis supplied.) *Jones v. State,* 132 Md. 142, 149, 103 A. 459, 461. In another case, where the appellant had been sentenced to hang for murder, the same question arose and the same quotation from Poe was repeated. *Snowden v. State,* 133 Md. 624, 636, 106 A. 5. There is some confusion on the subject in both civil and criminal cases, and at times it has been decided flatly that there is no appeal from a matter in the discretion of the trial court. For example, *Bannon v. Warfield,* 42 Md. 22, 39; *Watson v. Cook,* 170 Md. 377, 381, 184 A. 908; *Schneider v. Hawkins,* 179 Md. 21, 25, 16 A. 2d 861. We think, however, the correct rule is that stated by Chief Judge Bond in the case of *Newcomer v. Miller,* 166 Md. 675, 681, 172 A. 242, 244, where he said: "The existence of a discretion does not in all cases prevent review, however. While absolute in some cases, and not open to review, in others discretion is reviewable. (Citing cases.) The extent of discretion and the right of review differ according to the purpose of the discretion. Here the court is considering, not a mere regulation of order and progress in a proceeding in court, or in a matter in which the judge's close contact with the circumstances would give him an understanding preferable to that of judges on appeal, so that by reason of these or other circumstances it should defer to the judgment of the trial judge. It is considering an action which might have a much closer connection with essential justice." The court in that case was considering the right of certain stockholders of a corporation to examine the books under circumstances in which receivers had been ap-

pointed who were claimed to be a debtor of the corporation and his counsel. It said "* * * it does not seem permissible to deny review *on complaints of substantial wrong,* as here" and reversed the lower court.

In the case of *Northwestern National Insurance Co. v. Rosoff,* 195 Md. 421, 73 A. 2d 461, we held that our Rule Four of the General Rules of Practice and Procedure, Part Two, III, which gives the right to implead third parties in the discretion of the trial court does not necessarily mean that where the action of the trial court is clearly arbitrary, or has no sound basis in law or reason, it cannot be reviewed. We said, however, that we cannot reverse the judgment of a trial court unless there is grave reason for doing so.

A joint trial under the circumstances in this case would necessarily raise in the minds of the jury the question which of the defendants was telling the truth, or whether both were lying. Under such circumstances it would be a practical impossibility for the jurors to dismiss from their minds the statements of Lewis against Day when considering the Day case, and to dismiss the statements of Day against Lewis when considering Lewis's case. No juror, no matter how intelligent and how desirous of doing his duty, and obeying the instructions of the court, could rid his mind of the impression necessarily made upon him by these statements of each of the defendants against the other. This court has said that an instruction given on behalf of one defendant to disregard statements made against him by another defendant is all that the court can do in a joint trial, but it has not passed upon the question whether the court could not or should not do more by way of granting a severance, if it is known to the court at the time the severance is asked that that situation is going to arise. In the case of *Markley v. State,* 173 Md. 309, at page 318, 196 A. 95 at page 99, this court said, speaking through Chief Judge Bond: "It may be that the practical value of such a restriction is small, but it is the only remedy practicable on *a joint trial.*" (Emphasis

supplied.) That was a conspiracy case in which no sever-ance was asked. In the case of *Jackson v. State,* 180 Md. 658, at page 665, 26 A. 2d 815; *Markley v. State, supra,* was quoted as authority for not striking out the confes-sions after it appeared that one defendant had made admissions which would implicate the other. That case was a murder case in which the three defendants had been jointly indicted and tried for murder. The court was careful to point out, at the beginning of the case, that the defendants did not ask for severance. In the case of *Jones v. State, supra,* 185 Md. at pages 490-491, 45 A. 2d 354, it appears that counsel for the defendants did not make any motion to limit the evidence in each confession to the traverser making it. In that case, a motion for severance was made on behalf of one defen-dant, but no reason was given, and the court at that time may well have been unaware of the situation that was about to develop as to the confessions.

In the case of *Peters & Demby v. State,* 187 Md. 7, 14, 48 A. 2d 586, it does not appear that any motion for severance was made, or that there was any prospect of disagreement between the traversers at the inception of the trial. Confessions were received and the court directed that each confession would be received only as evidence against the person making it. We said that practice had been approved.

The State contends that the defenses of the appellants were not hostile because, when a murder is committed in the course of a robbery, each of the participants is equally guilty of murder in the first degree, and that, as each confessed that he participated, he was not harmed by the confession of the other. We think, however, this contention does not go to the root of the matter. It is true that each defendant on his own confession might be held guilty of murder in the first degree, but the jury is not only the judge of the law and the fact, but in cases of murder in the first degree, it has something to do with the sentences. It may find one defendant guilty of murder in the first degree without capital punishment,

thereby saving his life. It is quite possible that the jury might, with complete legality, decide to find the man who it thought actually did the killing, guilty without a recommendation of mercy, but might make such a recommendation for the man who stayed outside the trolley car. Under such circumstances, there would be a very real contest between the defendants, with their lives as a stake, as to who actually did the killing. The jury might believe one or the other, or neither, and it might not recommend mercy for either, but the possibility is there, and to that extent we think the defenses of the two traversers were not only hostile but very damaging to each other.

In other jurisdictions, in similar cases, appellate courts have reversed the trial courts and granted severances. Thus, in *State v. Desroche,* 47 La. Ann. 651, 17 So. 209, 210, the defendants had been convicted and sentenced for burglary. The Appellate Court, reversing the trial court, said: "We are informed by the bills that the defenses were antagonistic, and each had made confessions incriminating the other. To try both together was, in effect, to try each on the confession of the other; and this, of course, would be to disregard the obvious principle that no man can be affected in his rights of person or property by the statements of another out of his presence, and not assented to by him. (Citing Louisiana cases.) It is possible there might be some grave cause to refuse a severance in such a case, although the refusal would lead to the use in evidence against each of the confessions of the other, and it is possible such cause might be deemed sufficient to warrant trying both accused before the same jury. It is enough to say the bills show no such cause. It appears that before the trial the severance was asked, and the ground of antagonistic defenses and incriminating confessions assigned. * * * The court * * * refused the severance; and the testimony went to the jury over the objection of the counsel of the accused. * * * Our learned brother of the district court was, doubtless, influenced in his action by the general

rule that applications for severance are addressed to the discretion of the court. Still, to this general rule there are exceptions. * * * In other words, the application for a severance is addressed to the legal discretion of the lower court, and the appeal requires us to determine whether the cause existed for the application. We think the basis is exhibited."

In *Flamme v. State,* 171 Wis. 501, 177 N. W. 596 at page 598, the court said:

"It is contended that the court erred in refusing to grant the defendants' request for separate trials. The question of granting defendants in criminal cases separate trials when jointly informed against for offenses arising out of the same transaction is largely within the discretion of the trial court. *Mayfield v. State,* 142 Wis. 661, 126 N. W. 15.

"The instant case presents the peculiar situation that the offenses charged against the defendants, though different in degree, necessarily arise out of the same criminal act. The court in receiving the confession of Mabel Banker properly held it was not competent evidence against Flamme and so instructed the jury. Yet in the very nature of the evidence, if it was considered proof of the guilt of Mabel Banker of the offense charged against her, then it inevitably followed that it proved the offense charged against Flamme. We can conceive of no mental process by which the jurors could do otherwise than so regard it, and thus necessarily prove the offense of Flamme. This clearly presents a case where the confession of a defendant, admissible against her, but not against a codefendant, must inevitably operate to the prejudice of the latter defendant's rights. Under these conditions a denial to grant separate trials is clearly an abuse of discretion."

In *People v. Patris,* 360 Ill. 596, 196 N. E. 806 at page 808, a conviction was reversed on the ground that the refusal of a motion for severance was arbitrary where a codefendant had made a confession. The court said:

"When a motion for a separate trial is made on the ground of a confession by a codefendant implicating the mover, a severance should be ordered unless the state's attorney declares that the admissions or confessions will not be offered in evidence upon the trial or unless there be eliminated from the confessions any reference to the codefendant applying for a severance. * * * It has been held that, on the plainest principles of justice, if the prosecutor intends to use such confession the prisoner shall be tried separately. * * * While it is generally a matter of discretion with the court as to whether a separate trial shall be granted, such discretion is not to be exercised arbitrarily but so as to prevent injustice. The court instructed the jury to disregard the testimony as to the admissions of Currin made out of the presence of Patris, but the instruction could not cure the damage already done. While, theoretically, the instruction withdrew the evidence from the consideration of the jury, nevertheless the prejudicial effect of the testimony inevitably remained. * * *

"The denial of a petition for a severance, under the circumstances shown by the record, was an abuse of the court's discretion and undoubtedly contributed largely to the conviction of the defendant. Upon his guilt or innocence we express no opinion, but the Constitution guarantees to every person accused of crime, whether innocent or guilty, a fair and impartial trial, and no person should be condemned who has been deprived, over his objection, of such a trial."

In *People v. Feolo*, 282 N. Y. 276, 26 N. E. 2d 256, 258, four defendants had been convicted of murder in the first degree. Motions for separate trials were made and refused because of a confession by one codefendant. The court said: "When defendants are jointly indicted, the question whether there should be separate trials is addressed primarily to the practical good judgment of a trial judge. In the ordinary case, a ruling directing a joint trial will be on the safe side, though confessions or admissions made by one defendant will not be binding

on another. * * * The point at which discretion ends and severance becomes a duty is at times hard to fix. * * * Here the duty to sever was clear before this trial began, though that is not a controlling consideration now."

In *Commonwealth v. James,* 99 Mass. 438, the court said: "The general rule is, that persons jointly indicted should be tried together. It is conceded that the court may *in its discretion* order separate trials. This should not be done unless it appears that one or more of the defendants may be prejudiced by a joint trial. The fact that it may affect their right of challenge is not a sufficient reason for directing separate trials. If it were, it would be a reason for changing the general rule, as it applies to all cases. But in the present case, if the Commonwealth intends to offer in evidence the whole confession of Charles T. James, its application to Silas James as well as to himself may prejudice Silas, and the motion should be granted. We regard this, however, as an exceptional case. It will generally be safe to try parties together, although some admissions may be made by one that are not binding on the other."

In Bishop's *New Criminal Procedure,* Second Edition, Vol. 2, page 889, Paragraph 1019a, it is said: "Confessions—by one defendant, involving another, are admissible only against the one, and are calculated to prejudice the jury against the other; therefore if they are to be introduced, the trials should be separate." See also Columbia Law Review, Vol. XXXVI, pp. 1359, 1360.

Under ordinary circumstances, where two parties are accused of the same crime, it is in the interest of both justice and economy that they should be tried together, but under the circumstances of this case, we have come to the conclusion that it was an abuse of discretion by the trial court, after it knew what evidence was to be produced, not to grant the severance prayed, and we will therefore reverse the case as to each defendant on this ground so that a new and separate trial may be had as to each.

The question as to the admissibility of the various confessions will inevitably come up in the new trials, presumably upon the same evidence as that offered in the record before us. They were objected to by both appellants. Without going into too much detail, it appears that after both men had been arrested, Lewis was interrogated and a statement taken down by Officer Kummer, then Day was interrogated and his statement was taken down by the same officer. On the following day, assistant State's Attorney O'Donnell was called in, and, with one of the stenographers of the Supreme Bench he went to the stationhouse and there each of the two appellants was again interrogated separately, and the stenographer took down each of their statements. Then, since the statements were at variance with each other, the two men were brought into the Captain's office together, what each had to say was read to the other, he was interrogated about it, and his responses were taken down. Each stuck to his story, and finally Captain Feehley said: "It doesn't make any difference which one cut him, you are both in as deep as the other, so get it straight, because the Court will ask you, and whoever is being truthful about it, will get the most consideration, because I'm going to tell the Court just what trouble we had getting you fellows to take the responsibility." The court admitted the four separate statements and the joint statement up to the remark of Captain Feehley, but deleted this remark and all that followed it.

Day claims that his confessions should not have been admitted because he had engaged counsel and, although the police knew this, they talked to him out of the presence of his counsel and got the confessions. He also contends that the joint confession should not have been deleted, and, as the whole of that confession obviously could not have been put in evidence after Captain Feehley's inducing remarks had been made, it should all have been excluded. Both Lewis and Day contend that the statements were not voluntary, due to the continued interrogation from the time of arrest which, in

Day's case, started at 2:30 A.M. on October 6 and continued at intervals until the afternoon of October 7. His shoes, socks, shirt and vest were removed for examination as they were covered with blood, and he was kept for some time clad only in trousers, but subsequently a pair of socks was gotten for him. Lewis was examined at intervals from about midday on October 6 until the afternoon of October 7. It does not appear, however, and it is not claimed, that there was any physical violence used, or that the removal of the clothing from Day (and a pair of shoes from Lewis for the same reason) had any effect on their physical wellbeing, or that it continued any longer than necessary to get other clothing. Appellants claim, however, that the continued examination by the officers was so harassing that their statements were not voluntary, citing in this connection some recent remarks of the Supreme Court in *Watts v. Indiana*, 338 U. S. 49, 69 S. Ct. 1347, 1357, 93 L. Ed. 1801.

The failure to have counsel present, or to permit the accused to consult counsel, is not of itself a reason for denying the admission of a confession, provided such confession is shown otherwise to have been given voluntarily. See *McCleary v. State*, 122 Md. 394, 89 A. 1100. In the recent case of *Cox v. State*, 192 Md. 525, 64 A. 2d 732, the appellant was questioned from 3 A. M. to 5 A.M. on the day, and from 12:30 A.M. to 3:30, and from 6 A.M. to 7:15 A.M. another day, and between 1 and 4 on the third day. On the latter day, at 7:50 A.M., he was again questioned and made his confession at 10:30 A.M. He had food, but he said he did not sleep very much. We held, notwithstanding this lengthy questioning, there was nothing else to show that the confession was not voluntary, and therefore it was properly admitted. In the case of *Grear v. State*, 194 Md. 335, 71 A. 2d 24, decided after the case of *Watts v. State of Indiana*, 338 U. S. 49, 69 S. Ct. 1347, 1357, 93 L. Ed. 1801, *Turner v. Commonwealth of Pa.*, 338 U. S. 62, 69 S. Ct. 1352, 1357, 93 L. Ed. 1810 and *Harris v. State*, 338 U. S. 68, 69 S. Ct. 1354, 1357, 93 L. Ed. 1815, we discussed the Cox case and

these cases, and determined that the questioning of Grear, conducted somewhat similarly to that of the appellants in the case before us, did not violate due process.

In the case before us, nineteen witnesses, seventeen of whom were police officers, one of whom was a stenographer and one an assistant state's attorney, who were all the persons in official positions who had custody of, or contact with, the appellants between the time when they were first arrested and the time when the final confessions were obtained, all testified that they did not, during the period when they were in contact with the appellants, use any violence on them or either of them, make them or either of them any promises or inducements, offer them or either of them any immunity, nor did anyone else in their presence do any of these things. Such statements made by those present at the final examination are weakened in their effect by the fact that Captain Feehley, at that examination, did make the statement already quoted in the presence of the assistant state's attorney, the court stenographer, and several other officers. This inducement offered by Captain Feehley did not, of course, apply to the earlier statements or confessions which had been obtained from the appellants, but the fact that those present testified that no inducements at all had been offered when he palpably had offered one toward the end of the joint confession, has some bearing on the truth of the testimony of those witnesses with respect to the earlier confessions. That is a matter, however, that goes to the weight of the evidence, and not to its sufficiency, and it does not affect the statements made by the officers who were not present at the last interview, but who were present at other times. Neither of the appellants testified, either before the court when the question of the authority of the statements was being considered, or before the jury, about violence, inducements, or any other improper action by the officers. Under such circumstances, it seems to us that the trial court was justified in admitting the separate confessions.

As to the joint confession, it is possible that none of it may be admissible against either of the appellants on separate trials and, as we are sending the case back for such trials, we do not pass upon the question what part of it, or how much of it, if any, will be so admissible.

The practice in this State, approved in many cases, is that the court first hears evidence without the jury to determine whether a confession is voluntary and should be admitted. If it decides to admit it, the same evidence is then given to the jury, as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed. In so doing, the jury is entitled to have before it all of the evidence which affects the voluntary character of the document, and which the court passed upon in admitting it. It is suggested that some of that evidence includes the testimony of those who heard Captain Feehley's statement, and, since they said that no inducement had been offered, the jury was entitled to have Captain Feehley's statement before it when considering the credibility of those officers as to the other confessions. It would undoubtedly be a proper question for the defendants to ask whether such officers had heard this statement, and in that way they could bring it before the jury, but at the trial before us, the defense did not attempt to do this, and the State offered only that part of the joint statement which preceded Captain Feehley's remarks. Objection was made to the offering of a part of the statement only, but the defendants did not ask that the whole statement be read (although the trial court gave them that option), but only that the part offered should be kept out. What may happen at the separate trials is, of course, a pure matter of conjecture. We have now nothing before us to pass upon in this connection.

Appellant Day also objects to certain testimony of a bloody footprint on a seat on the trolley car, and pictures of the car, but we find no error in the admission of this evidence.

For the reasons stated, the judgments will be reversed and the case remanded so that the severance may be granted and new and separate trials of each of the traversers may be had.

*Judgments reversed with new and separate trials for each of the appellants.*