MILLER *v.* STATE

[No. 204, September Term, 1962.]

*Decided March 20, 1963.*

The cause was submitted on the brief to Brune, C. J., and Henderson, Hammond, Horney and Marbury, JJ.

Submitted by *Tucker R. Dearing* for appellant.

Submitted by *Thomas B. Finan, Attorney General, Robert S. Bourbon, Assistant Attorney General, William J. O'Donnell, State's Attorney,* and *Charles E. Moylan, Jr., Assistant State's Attorney,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Miller, the appellant, was convicted by the Criminal Court of Baltimore, sitting without a jury, of robbery with a dangerous weapon. In his appeal to this Court, he challenges the sufficiency of the evidence and the admission of a confession he had given the police.

Miller said in his confession that he and Ruth Nance had been drinking wine and that she put a monkey wrench in her pocket and the two of them went into Glazer's grocery store and ordered a quarter pound of bologna, for which he paid. Ruth then pointed the monkey wrench in her pocket at Glazer, and both reached into the cash register and took money out.

Glazer testified that Miller bought and paid for the bologna, that Ruth then walked up and "pulled out a gun and said 'I mean business'" and that Miller then hit him in the face with his bare hand before they robbed the register. On cross-examination, Glazer said he was sure that what Ruth threatened him with was a gun, adding: "I saw a gun," and that she had the gun in her hand, as well as that "It wasn't a wrench, it was a gun." A fourteen-year-old boy, who came in the store during the robbery and ran out to call the police, identified Miller and Ruth as those who were robbing Glazer when he came in. When the robbers left the store, they ran down an alley and went through a house to the street on which it fronted. The householder and an occupant of the house next door identified Miller and Ruth as those who went through the house. The fourteen-year-old boy had run to that street, and he pointed out Miller and Ruth to the police as the robbers. After they had arrested Miller, the police searched him and took a piece of bologna from his pocket. The next day Miller gave the confession which was exculpatory as to the use of a gun, and in which he claimed that his companion Ruth had used the monkey wrench to imitate a gun.

The corpus delicti was proved by the testimony of the store owner, Glazer, and the fourteen-year-old boy, and these two witnesses identified Miller as one of the robbers. There was corroboration of this by other witnesses. The trial judge found as a fact that the robbery had been effected at the point of a

gun, and Glazer's explicit testimony a number of times to this effect permitted this finding. *Dyson v. State,* 226 Md. 18, 21. The finding justified the conclusion of the judge that the robbery had been with a dangerous weapon, without further testimony as to the kind of gun or as to whether it was loaded. *Hayes v. State,* 211 Md. 111; *Vincent v. State,* 220 Md. 232, 237, 238. There was a full sufficiency of evidence to support the conviction.

Miller contends that his confession, which was admitted against him, was obtained by physical force and duress, after an unnecessary period of delay and after he had been denied the right to call counsel. The police officers who obtained the confession testified that because Miller had been drinking prior to his arrest he was not interrogated at any length until the following day, and that when he was, the confession was given and signed freely and voluntarily after he had been advised of the nature of the charges and of his rights and the possible use of the confession against him in court. They said further that there had been no threat, physical force or duress and no promise or inducement. They also say that Miller was not denied the right to call counsel. Miller did not take the stand, and there was no other refutation of the testimony of the police officers as to the voluntariness of the confession. Miller has shown no prejudice in the delay in questioning him until the day following his arrest, and there is nothing in the record, in the words of *Jones v. State,* 229 Md. 165, 171, "to indicate or even suggest that the will of the defendant, (who, though lacking book learning, was nevertheless schooled in the things and ways of the criminal world), had been so overpowered that he was unable to resist making the inculpatory statement he gave the police." If it be assumed that Miller had sought and been denied counsel, that circumstance alone without the showing that the confession was not his free and voluntary act, would not make it inadmissible. *Presley v. State,* 224 Md. 550, 559, cert. den. 368 U. S. 957, 7 L. Ed. 2d 389; *Driver v. State,* 201 Md. 25, 30; *Day v. State,* 196 Md. 384, 397; *Jones v. State, supra.*

After the case was under consideration by this Court, Miller

sent to the Clerk a letter and a statement which he signed and swore to. In the letter he said that his counsel, who represented him at the trial and on appeal by appointment of the court, had not sent his sworn statement to the Court of Appeals, as he had requested. In the letter he complains also of his counsel's "negligence, lack of diligence, unconcern and inattention," which he says amounted to incompetence.

Miller's statement says that he was beaten by the police after his arrest and that his confession was obtained as a result. He alleges, too, that a sergeant told him that if he revealed anything of this to the magistrate or to the trial court, he would be beaten again.

Our careful review of the transcript of the proceedings in the trial court and our consideration of the workmanlike brief filed on Miller's behalf, lead us to conclude that there is no basis whatever in fact for his allegations as to the shortcomings of his experienced and able counsel. Miller's statement of facts cannot be received on appeal as a supplement to the testimony given at the trial at which he was convicted. Treating it as his own brief, as we do, the significant allegations which he makes were made in the printed brief prepared by his counsel, and have been discussed and disposed of. Supplementing the prior discussions of them, it may be noted that Miller, who displays intelligence and who has become well acquainted with criminal procedures from a number of convictions through the years, sat silent in the criminal court, which had become so familiar to him, while his signed confession was being read and made no objection or exception to anything in it.[1]

Afterward, towards the end of the case, the trial judge asked Miller's counsel if he had anything further to offer as

---

1. Included was the statement that his revelations "must be given freely and voluntarily * * * without any threats or promises of reward being made to you" and the statement "that anything you say can be used for or against you in a court of law at the time of your trial." There followed this colloquy: "Do you understand what I just said to you?" Answer: "Yes." Question: "Do you still want to make a statement?" Answer: "Yes."

to the defendant Miller, to which counsel replied: "No further evidence as to Miller. I would like to have the record to show he has been advised of his rights to take the stand and he refused to take the stand." The trial judge then said: "Is that correct Miller?" to which the answer was "Yes." The court said: "You are saying that is correct. All right." If Miller had the complaints as to the obtention of his confession, which he now seeks to make, the time to present them was during the trial when the truth of his allegations could have been gone into by the trier of fact. He chose to waive and forfeit the chance to make the claims he now seeks to make.

We note that the printed record extract contains a letter from Miller to his lawyer, dated November 14, 1962, which his counsel printed at his client's request, and in which Miller says, in part, in regard to his appeal: "Since thinking it over, I wish you would challenge the legality of the State's use of the confession since it was obtained by force, physical beating, duress, threats & intimidation, and because it was obtained during a period of unnecessary delay after arrest, and before I was advised of the exact nature of the charges against me and my constitutional rights. * * * Also I want to challenge the legality of the State's refusal to let me call or obtain, or confer with counsel after my arrest."

Miller then says to his lawyer in the letter: "I thank you for your cooperation and help, and I look forward to your visit next week." This sentiment seems scarcely to gibe with his present complaints of the conduct of his case on appeal (none of them seem to go to the conduct of the trial). It may be significant, too, that the letter contains this statement: "None of this may impress the State Courts, and may not help me in the Court of Appeals, but if I do not obtain adequate relief in the State Courts I am going into the Federal Courts and I can not submit these things for Judgment in the Federal Courts until they have been litigated in the State's Court of last resort."

We have found nothing in the case to suggest that there was error in Miller's conviction.

*Judgment affirmed.*