John Albert MILLER

v.

WARDEN, MARYLAND PENITENTIARY.

Civ. No. 14591.

United States District Court
D. Maryland.

Oct. 30, 1963.

Alan M. Wilner, Baltimore, Md. (court appointed), for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Gerard Wm. Wittstadt, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This petition for a writ of habeas corpus filed by a State prisoner raises the questions of alleged (1) coerced confession, (2) denial of the right of counsel and (3) incompetency of counsel.

Petitioner (Miller) was convicted of robbery with a deadly weapon by the Criminal Court of Baltimore City on May 29, 1962, and was sentenced to a term of twenty years. On direct appeal the conviction was affirmed. Miller v. State, 231 Md. 158, 189 A.2d 118. No petition for a writ of certiorari was filed, and no application has been made by Miller under the Maryland Post Conviction Procedure Act (P.C.P.A.), Code, Art. 27, secs. 645A–645J.

Pending the appeal from his conviction, he filed a petition for a writ of habeas corpus in the Circuit Court for Baltimore County, which was denied by Judge Menchine on the ground that "all of the points raised in the petition for habeas corpus are matters that can be raised on his direct appeal".

Since the major points raised by this petition have been fully considered by the Court of Appeals of Maryland on appeal from the conviction, this Court appointed counsel to represent Miller, and granted a hearing at which Miller testified and other evidence was presented. This Court has also reviewed such portions of the record in the Criminal Court and in the Court of Appeals as counsel for either side felt were relevant and material to the issues presented. Although the petition filed herein contained a considerable number of overlapping points, Miller's present counsel stated to the Court at the hearing that Miller was pressing three points, namely: (1) that Miller's confession was obtained by coercion and physical abuse while he was being held incommunicado; (2) that he was denied the assistance of counsel before arrest and after arraignment; and (3) that his court-appointed trial counsel failed to give effective assistance. Miller agreed in open court that these issues adequately raised all points that he wished to press and that he knew of no other ground entitling him to relief.

*Facts*

At the trial of the criminal case evidence was offered which justified the conclusion of the trial judge that Miller and a woman named Ruth Nance entered the store of one Glazer shortly before 1:00 P.M. on April 19, 1962; that Miller bought and paid for a quarter of a pound of bologna; and that Ruth Nance then pulled out a gun, Miller hit Glazer in the face, and the two of them rifled the cash register. No evidence was offered at the hearing on this petition to challenge those facts. The thrust of petitioner's evidence here is directed to the three points listed above.

The evidence presented to this Court indicates that a few minutes after the robbery Miller and Ruth Nance were on Mulberry Street in the immediate vicinity of Glazer's store and were pointed out to the arresting officers by a fourteen year old boy who had witnessed the robbery and who shouted, "There they are". Both Miller and Ruth Nance were arrested. Miller had a quarter of a pound of bologna in his possession, wrapped in paper which was later identified as Glazer's. Miller was promptly taken to the Western Police Station and Ruth Nance was taken to the Pine Street Station, where women are usually held.

Miller had drunk five or six pints of wine and a bottle of beer that day, and when he reached the Police Station he was inebriated. He testified that he could not think clearly and felt sick and high. He was questioned for a few minutes by the arresting officers, and shortly thereafter Sergeant Coll (now Lieutenant Coll) came in and talked to him for a while. Although Miller was reasonably coherent, Coll concluded that it would not be fair to question him in his inebriated state and postponed further questioning until the next day.

Before noon on the following day, Ruth Nance had been brought to the Western Police Station for questioning. She had confessed and had implicated Miller. Coll then confronted Miller with Ruth Nance and, after she was taken away, Miller, under questioning by Coll and in the presence of several other police officers, gave and signed the confession which was admitted in evidence at the criminal trial. See Miller v. State, 231 Md. at 160, 189 A.2d at 119. At the hearing in this Court, Miller denied that he had said what was written in his signed confession. He testified that he had told the officers that he had gone into the store with Ruth and had purchased the bologna, but that he did not know she was going to say it was "a stick-up", and that when she said that he pulled her out of the store. I find as a fact that he told the officers what they wrote down.

Miller contends that he was coerced into signing the confession by beatings administered to him by the police officers and by threats of further beatings if he did not cooperate and sign the confession. To support his testimony that he had been hit about the head and body by the officers, Miller produced as witnesses his wife and his sister-in-law. The latter saw him on the evening of April 20, the day on which he gave his confession, and on the following day. She testified that his face was swollen and that he told her he had been beaten. His wife, who had been out of town, testified that she returned to Baltimore on April 24 and saw him about April 27, that his face was swollen and that he told her about the claimed beatings. Lieutenant Coll and Officer Landsman, called by the State, flatly denied that Miller had been beaten or struck.

I cannot accept Miller's testimony for a number of reasons:

(1) The discrepancies between (a) his testimony in this Court and (b) the affidavit which he filed with the Court of Appeals of Maryland, particularly the statement in the affidavit that Sergeant Coll struck his left eye as against his testimony in this Court that the Sergeant did not hit him at all, but that other officers hit his left eye causing difficulties for which he is still being treated.

(2) The fact that the first time he asked for a doctor for his eye was after his conviction and commitment to the Maryland Penitentiary, where he told the doctor nothing about having been struck by the police, but said that he was hit in the left eye in a fight four years before, and gave a history of bad vision in the left eye for about ten years.

(3) That an associate of an attorney who represented Miller in a civil action, who saw Miller five days or so after his wife saw him, said that he noticed nothing the matter with Miller's face and that Miller said nothing to him about having been beaten.

(4) That his court-appointed attorney who saw him about four weeks after the confession saw no evidence of any bruises or swelling, although Miller said something to him about having been beaten by the police.

As an additional circumstance tending to show coercion, Miller claims that he was denied the right to call his lawyer or anyone else until after he had confessed, although he says he requested permission to do so (a) when he was first brought to the police station, (b) several hours later when he (erroneously) says he was interviewed by Sergeant Coll, (c) later that evening when he was in his cell, and (d) again on the following day before he told his story to the Sergeant. Miller testified that after he had signed his confession he was given a dime by Sergeant Coll so that he could make a telephone call. He fixes this time as a little after 5:00 P.M. on Friday, April 20. He says that he first called the office of his civil attorney and got no response, then called his sister-in-law and asked her to come to see him. I find as a fact from all the evidence that he did not ask permission to call his lawyer at any time before he gave his confession. I find that after he sobered up on the evening of the 19th or the morning of the 20th he probably did ask permission to make a phone call, without specifying whom he wished to call, but intending to call his sister-in-law, with whom he was living. My conclusion that he did not ask permission to call his lawyer is based upon a number of facts, including the following:

(1) His call on the 20th to his sister-in-law was in fact made about 3:00 P.M., not after 5:00 P.M., and if he had attempted to reach his lawyer on the phone immediately prior thereto, the lawyer's office probably would have answered;

(2) When his sister-in-law came to see him that evening he did not ask her to try to get in touch with his lawyer; and

(3) He made no further effort himself to get in touch with his lawyer until after his wife returned to Baltimore the middle of the following week and came to see him on the Friday of the following week.

I find that the confession was not obtained by force, duress, threats or promises, but that it was voluntarily given.

On April 21 Miller and Ruth Nance were placed in a line-up and seen by Glazer and the boy, who were uncertain about the identification of Miller at that time. On April 22 Miller and Ruth Nance were taken before a Municipal Court Judge sitting as a committing magistrate. In accordance with the practice of some but not all magistrates in Maryland at that time, Miller entered a plea of not guilty, and was held for the action of the grand jury. It does not appear that Miller asked to have his lawyer present at that time or that he asked the Court to appoint a lawyer for him; nor does it appear that he was offered counsel by the Municipal Court Judge.

On May 8 he was indicted for robbery with a deadly weapon. He was brought to the Criminal Court not later than May 22 (the date is not entirely clear) and the court appointed Tucker R. Dearing, Esq., an experienced member of the Bar of Maryland and of this Court, to represent him. Dearing visited him in the Jail on or about May 22 and discussed the case with him. Miller told Dearing that he had no witnesses, and although he told Dearing that the police had beaten him before his confession was given, he did not tell Dearing that his sister-in-law

and his wife could furnish evidence to support this charge. During the visit at the jail, during a subsequent visit in the lock-up before the trial, and during the course of the trial, Dearing discussed with Miller the possibility (a) of Miller taking the stand generally, and (b) of Miller taking the stand for the limited purpose of attacking the confession. Dearing explained to Miller that if he took the stand generally his prior criminal record could be brought into the case, whereas it could not be referred to if he took the stand for the limited purpose. Miller says that Dearing advised him not to take the stand generally. Dearing says that he explained to Miller the legal situation and consequences of taking the stand generally or for the limited purpose, and that Miller absolutely refused to take the stand either generally or for the limited purpose. Dearing said he could not remember at this time why Miller did not want to take the stand.

At the hearing on his pending petition, Miller gave several reasons why he was unwilling to take the stand:

(1) That Dearing advised him not to do so and that he acquiesced in Dearing's advice. I find that Dearing may have advised him not to take the stand generally; certainly the decision was left to Miller, as it should have been, and Miller decided not to do so. I do not find that Dearing advised him not to take the stand for the limited purpose.

(2) That he had been threatened with reprisals by the police officers if he told about the beatings. I find this to be untrue.

(3) That he had been told by the officers that if he did not say anything about the beatings they would help him with the Judge, and that since the officers entered the courtroom through the same entrance that the Judge entered (which Miller erroneously thought to be the door to the Judge's private office), he thought it was wiser not to take the stand for any purpose. I find that no such specific promise was made by the police officers, although it is quite possible that they told Miller at some time that if he told the truth it would be better for him and they may have said that they would tell the authorities that he had told the truth.

At the end of the criminal trial, Miller stated in open court that he had elected not to take the stand. When he was given the right of allocution after he was found guilty, he did not make any contention that the confession was obtained by beatings or other improper conduct.

On appeal to the Court of Appeals, his attorney argued under two headings that the evidence did not support the finding that a deadly weapon had been used in the robbery. Miller's attorney (Dearing) attached to his brief a copy of a letter from Miller to him dated November 11, 1962, six months after the trial, obviously prepared with the help of friends in the Penitentiary, asking him to challenge the State's use of the confession since it "was obtained by force, physical beating, duress, threats & intimidation, and because it was obtained during a period of unnecessary delay after arrest, and before I was advised of the exact nature of the charges against me and my constitutional rights".

Miller himself later sent to the Court of Appeals of Maryland a letter dated February 11, 1963, with an affidavit attached, both also prepared with the advice of friends who had obviously read recent court decisions, which recited a series of beatings in colorful detail and contended that the confession was obtained by coercion, and also that his trial counsel was incompetent. These contentions were fully considered by the Court of Appeals. Miller v. State, 231 Md. at 161–163, 189 A.2d at 119–120.

### Discussion

■ 1. Since I have found as a fact that the confession was voluntary, not induced by any force, duress, threats or promises, and that Miller made no request for permission to call his lawyer, there is no factual basis for the claim that the confession was coerced. It may well be that Miller was denied permission to call his sister during the night

following his arrest, but under the circumstances this did not deprive him of any constitutional right. Sergeant Coll had attempted to interrogate Miller shortly after he was brought to the police station by the arresting officers, but had found that Miller was too inebriated to make such an interrogation fair, and had postponed it until the Sergeant came on duty the following day. Since this postponement of the interrogation was for Miller's benefit—so that he could sober up before he told his story—it was not unreasonable for the police to postpone his right to use the telephone until the initial interview and interrogation could be completed, provided it was not too protracted. In fact, the interrogation was completed within a few hours after it was begun on the day after the arrest. Miller was not told that he could not communicate with his family or lawyer until after he had confessed, nor was any similar threat or promise made to him. The circumstances are very different from those in Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L. Ed.2d 513. In that case Mr. Justice Goldberg said:

"Of course, detection and solution of crime is, at best, a difficult and arduous task requiring determination and persistence on the part of all responsible officers charged with the duty of law enforcement. And, certainly, we do not mean to suggest that all interrogation of witnesses and suspects is impermissible. Such questioning is undoubtedly an essential tool in effective law enforcement. The line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly in cases such as this where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused. But we cannot escape the demands of judging or of making the difficult appraisals inherent in determining whether consti-

tutional rights have been violated." 373 U.S. at 514–515, 83 S.Ct. at 1344.

I conclude that the confession was not coerced, and that no constitutional right was violated with respect thereto.

■ Moreover, it appears that with knowledge of all the facts and with knowledge of his legal rights imparted to him by his lawyer, Miller deliberately elected not to take the stand even for the limited purpose of challenging his confession, and thereby knowingly and voluntarily waived the right to raise the point. Even under the broad rule of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837, and other applicable decisions of the Supreme Court and the Fourth Circuit, he is now barred by such deliberate election and waiver from relief based on that point in this habeas corpus proceeding.

■ 2. This Court has found as a fact that petitioner did not request leave to call his attorney while he was in the police station, and made no effort to communicate with his attorney until after his wife came to see him in the jail on April 27, eight days after his arrest.

Meanwhile, on April 22, he had been taken before a judge of the Municipal Court, sitting as a committing magistrate. Miller contends that he was denied the assistance of counsel at that hearing, and so was deprived of his constitutional rights, citing White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193.

The facts of this case are different from those in White, particularly in that Miller entered a plea of not guilty before the Municipal Court, whereas White had entered a plea of guilty, which was offered in evidence against him at his trial. It does not appear that Miller asked to have his lawyer present at the hearing in the Municipal Court or asked the judge to appoint a lawyer for him.

For the reasons stated by Judge Northrop, with the concurrence of the other judges of this Court, In the matter of DeToro, D.Md., 222 F.Supp. 621 (1963), I conclude that the failure of the magis-

strate to offer counsel to Miller did not deprive him of any constitutional right under the facts of this case.

3. There is no basis for the contention that Miller's counsel at his trial failed to render him effective assistance. The proper test to be applied to the services of a lawyer, when his effectiveness is challenged in a habeas corpus proceeding, is not whether the lawyer was able to obtain an acquittal but whether his representation was so inadequate as to constitute a denial of the effective assistance of counsel. Turner v. State of Maryland, 4 Cir., 318 F.2d 852 (1963), and cases cited therein.

Tucker R. Dearing, the lawyer whom the Criminal Court appointed to represent Miller, is an experienced and conscientious member of the bar of that Court and of this Court. He faced a very difficult case, made almost hopeless by the repeated refusal of his client to take the stand, even for the limited purpose of challenging the confession, after Dearing had explained his rights to him, at the jail, in the lockup, and during the trial. Dearing did all that any reasonably competent lawyer could be expected to do under the circumstances. Certainly his conduct did not amount to the denial of effective assistance of counsel, within the rule laid down in the recent Fourth Circuit cases.

The Court regrets that Mr. Dearing has been required to spend the better part of a day in this Court in order to testify in a case involving a baseless charge against him.

Petitioner is not entitled to any relief in this proceeding.

The Court wishes to express its appreciation to Alan M. Wilner for his able and fair presentation of Miller's case.

The petition for writ of habeas corpus is hereby denied and petitioner is remanded to the custody of the respondent.

The Clerk is instructed to send a copy of this opinion and order to the Attorney General of Maryland, to the petitioner and to his counsel.