JOSEPH MARSHALL *v*. STATE OF MARYLAND

[No. 35, October Term, 1943.]

*Decided December 14, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Thomas F. Healey* submitted on brief for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Harry C. Butler, State's Attorney for Queen Anne's County,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

On May 5, 1943, the Grand Jury of Queen Anne's County returned an indictment, containing three counts, against Joseph Marshall. The counts charged: 1, housebreaking; 2, grand larceny; and 3, receiving stolen goods.

A demurrer was interposed to the indictment generally and to each count thereof. The court held the first count defective and the second and third counts good. The ruling of the court as to the last two counts is not discussed in the brief of the appellant, nor by his counsel in this court, and will be considered abandoned. Rule 38, Section 4, of this court.

In passing, it may be noted that the ruling as to the last two counts in the indictment is proper as they follow well-known forms long used in this State. The case proceeded to trial on the second and third counts.

On the 7th of April, 1943 (whether in the day or night is not disclosed by the record), the dwelling of Mr. and Mrs. Thomas Marsalis was unlawfully entered. At that time there was stolen from the house a metal strong box containing $497 in cash, ten War Savings Bonds of the denomination of $25 each, and thirteen articles of jewelry, the property of Mrs. Marsalis. The total value of the contents of this strong box is charged to be $13,647.

Marshall was apprehended, but on what day the record does not state. On April 10, 1943, he was questioned at the Centerville jail by Trooper Andrews, Sergeant Latham, Sergeant Randall, Sheriff Perkins and Deputy

Sheriff Hardesty. On Sunday morning, April 11, at about 2.30 o'clock, Trooper Andrews, Sergeants Randall and Latham went with Marshall to the garden behind his house. There, in the presence of Marshall and these officers, Andrews dug up the strong box and carefully noted its contents. At the trial, the court asked Andrews: "Are you familiar with the present contents of the box?" To which he replied: "Yes, sir." The box was then offered in evidence. The witness then examined the contents of the box and testified that he found "the same articles in it as were there the night it was dug up on Marshall's property."

While eight exceptions to rulings on evidence are reserved, seven are variations of the same ruling and may be considered as one, and the other is so trivial that there is really only one question to be considered.

While Mrs. Marsalis was testifying, the court asked the State's Attorney if he asked the witness about the value of the property alleged to have been stolen. The defendant objected to the court asking the State's Attorney this question, and it constitutes the first exception. It is contended that this action of the court before the jury was prejudicial to the defendant. With this, we do not agree. The purpose of the trial was to determine the guilt or innocence of the accused. This objective should not be frustrated by a mere technicality. The value of the articles stolen had to be proved and the calling of the State's Attorney's attention, by the court, to this omission was proper, and the contention that the prisoner was prejudiced thereby is not convincing.

The second series of exceptions is based on the argument that the officers held out an inducement to the accused that caused him to make a confession of guilt; that because of such inducement Marshall took them to where the box containing the stolen property was buried, and inasmuch as a confession of guilt by a prisoner obtained by inducements is not admissible in evidence against him, neither is the box containing the

stolen property admissible, because where it was buried was disclosed by reason of the confession so obtained. At the trial there was an attempt to offer what was supposed to be a confession. The jury was excused and the sheriff called by the State to lay a foundation for its admission. He was questioned as to the talk had with the traverser on April 10 and morning of April 11. The sheriff testified: "Andrews told the prisoner it was better to tell the truth; said he didn't want him to tell him no story about it; said he wanted him to tell the truth," and when asked by the court to tell what Andrews said to the prisoner he answered: "Well, he said to him, 'Joe, a good many people does wrong and its always, if you do these things, its always best to tell the truth about it. Don't tell me a lie about it. It's best for you to tell the truth. I don't want you to tell me no lie' and Joe said, 'I am going to tell you the truth'." It appears that the State abandoned its effort to introduce a confession the prisoner might have made. It is assumed by counsel for traverser that a confession was actually made but whether a direct confession of guilt was made we are unable to determine by this record. We are asked to infer from the fact that Marshall took the officers where the box containing the stolen goods was buried, he made a confession of guilt. This we cannot do.

" 'Guilty conduct, exculpatory statements and acknowledgments of subordinate facts, colorless with reference to actual guilt,' 'fall without the meaning of the term confession'." *Ford v. State,* 181 Md. 303, 29 A. 2d 833, 835.

From this record we could as well assume that the traverser made an exculpatory statement just as readily as we could assume he made a direct confession of guilt. And because the State's Attorney thought the accused made a direct confession of guilt, attempted to lay a foundation for its admission and then abandoned his effort to introduce it as a confession, it cannot be said the accused made a confession of guilt. But even

if this were not so we are of opinion the court made no mistake in admitting as evidence the strong box and its contents. At common law matter pertinent to the issue was always admissible and the court would not raise an issue as to how it was obtained. This rule has been followed in this State for a number of years. The Fourth and Fifth Amendments to the Constitution of the United States are inhibitions upon the Federal government, and Article 22 of the Bill of Rights of Maryland is an inhibition upon the government of the State of Maryland. These governments cannot by legislation, neither can their courts by process, compel a prisoner to produce his property or compel him to testify against himself in a criminal case. The constitutional limitation applies to governmental power, and does not relate to the irregular or unlawful acts of individuals.

"The true effect of the constitutional provisions here invoked against the admissibility of the evidence in question has been declared by the courts to be that they are inhibitions upon governmental action, and intended to prohibit legislation that may be oppressive to the citizen by subjecting him to vexatious and unreasonable search and seizure of his property, and compelling him, when accused of crime, to give evidence against himself, as also to restrain the courts from making use of their process to vex and oppress him in like manner; that they have no application to the irregular and unlawful acts of individuals. In the recent and valuable work on Evidence of Professor Wigmore it is affirmed, upon an exhaustive and discriminating review of the authorities, that it is universally conceded that chattels and documents in the possession of an accused party are within the protection of the constitutional provisions in question, if sought to be produced in evidence through process against him as a witness; but if obtained from him otherwise than by the use of such process they are not within the privilege which these provisions confer. 4 *Wigmore on Evidence*, Sec. 2264. In 1 *Greenleaf on Evidence*, Sec. 254(a) it is laid down

that 'though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice of how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question'." *Lawrence v. State*, 103 Md. 17, 33, 34, 63 A. 96, 102.

"When evidence offered in a criminal trial is otherwise admissible, it will not be rejected because of the manner of its obtention." *Meisinger v. State*, 155 Md. 195, 141 A. 536, 538, 142 A. 190; *Heyward v. State*, 161 Md. 685, 694, 158 A. 897; *Baum v. State*, 163 Md. 153, 156, 161 A. 244.

And in *Hitzelberger v. State*, 174 Md. 152, at page 165, 197 A. 605, at page 610, Judge Mitchell quoted 1 *Greenleaf on Evidence*, 12th Ed., p. 385: "It may be mentioned in this place, that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

The strong box and its contents which were received in evidence were identified by the owner as her property, were pertinent to the issue in the case, and therefore clearly admissible in evidence. As the traverser was convicted of grand larceny, which is a felony (*Danner v. State*, 89 Md. 220, 42 A. 965) Section 5 of Article 35 of Flack's Annotated Code of Maryland, 1939, has no application.

*Judgment affirmed, with costs to the State.*