STATE OF MARYLAND *v.* JOHN THOMAS HILL,

[No. 6, September Term, 1967.]

*Decided December 12, 1967.*

Before Murphy, C. J., and Anderson, Morton, Orth, and Thompson, JJ.

Murphy, C. J., delivered the opinion of the Court.

On January 7, 1953, John T. Hill was found guilty of murder in the first degree by a jury in the Circuit Court for Har-

ford County and sentenced to life imprisonment in the Maryland Penitentiary. While he did not take a direct appeal, he filed a petition under the Uniform Post Conviction Procedure Act on December 18, 1958. The petition was denied on May 23, 1961, following a hearing, by Judge Stewart Day in the Circuit Court for Harford County. Application for leave to appeal was denied on December 7, 1961. *Hill v. Warden,* 227 Md. 665. A petition for a writ of habeas corpus was thereafter filed in the Federal District Court on April 26, 1962. After an evidentiary hearing, the petition was denied on June 5, 1962 by the late Judge W. Calvin Chestnut. A subsequent petition for a writ of habeas corpus was filed in the Circuit Court for Harford County and denied by Judge Harry C. Dyer, Jr. on December 9, 1963.

The present post conviction proceeding was commenced by a petition filed on September 21, 1964 and raised for the first time since the trial the question of the voluntariness of a statement made by Hill and received in evidence at his trial. An evidentiary hearing was held on May 26, 1965, at which time Judge John Grason Turnbull denied all of Hill's contentions except that concerning the voluntariness of his statement. On December 21, 1966, Judge Turnbull gave an oral opinion in which he held that Hill's statement was involuntary. In an order dated January 9, 1967, the judgment of conviction was stricken, and Judge Turnbull directed that a new trial be held within ninety days. The State filed its application for leave to appeal from that order on February 8, 1967, asserting therein that the evidence adduced at the post conviction hearing was insufficient to justify the court's finding that Hill's statement was involuntary.

Due to the failing sight of the court reporter, only a portion of the trial transcript is available, and the facts must be ascertained from Hill's written statement that was introduced into evidence at his trial, the transcript of the post conviction hearing and the available portion of the trial transcript, which includes the testimony of an FBI agent who was present at Hill's arrest and who later interrogated Hill at FBI headquarters. We glean from these that on March 19, 1950, Hill, in the company of Harry "Raspus" Watkins, William Jerry Watkins, Thomas Mathews Watkins, Arnold Sylvester Smith, and Mon-

roe "Slim" Vaughn, participated in the hold-up of a grocery store in Willoughby, Maryland. Harry "Raspus" Watkins, Monroe Vaughn and Hill entered the store. The storekeeper, Winchester Smith, was beaten about the head with a hammer and died from the blows. Approximately ninety dollars was stolen from the store. All of the participants except Hill were soon apprehended. All five pleaded guilty to murder in the second degree. Harry "Raspus" Watkins's plea was not accepted, but he was later found guilty of that offense by a jury. The two men who were inside with Hill each received fifteen-year sentences and the three participants who remained outside each received eight-year sentences. All five of these men gave consistent statements approximately one week after the crime which thoroughly implicated Hill and which were admitted into evidence at Hill's trial.

Hill fled from the State after the crime was committed, eventually going to Detroit where he found a job and rented a room in a rooming house. Shortly after 5:00 a.m. on August 16, 1952, agents of the FBI entered Hill's room where he was sleeping and arrested him. While a federal fugitive warrant was outstanding for Hill's arrest, it was not in the possession of the arresting agents at the time of the arrest.

Hill testified at the post conviction hearing that eight FBI agents broke into his room unannounced while he was sleeping, shone lights in his eyes, took him downstairs, stood him up against the house without any clothes on, thereafter dressed him, and took him to FBI headquarters in downtown Detroit where they interrogated him. He testified that all the agents had guns, "machine guns, shot guns, or something," and that they told him when they entered his room that "Maryland only wants your head." He further testified that at the time of his arrest, he was not informed of his right to remain silent or that anything he said could be used against him; that at no time prior to his interrogation was he informed of his right to counsel; that at the interrogation, the agents again told him that "Maryland wanted his head"; that they told him that "the State had nothing against me"; that they nevertheless wanted him to sign a "petition," telling him that if he didn't sign it "he wasn't coming back to Maryland"; that the agents had guns on him

at the time of the interrogation, and that he was scared they were going to kill him; and that he therefore signed the petition, although he didn't know what it contained.

The testimony at Hill's trial of Agent Palmer M. Wee, one of the arresting FBI agents, was received in evidence at Hill's second post conviction trial. Wee's testimony was substantially as follows: that at 5:30 a.m. on August 16, 1952, eight agents of the FBI came to Hill's rooming house; that they were all armed with revolvers and one agent had a machine gun, and another a sawed off shot gun; that two agents armed only with revolvers entered Hill's room while he was sleeping, grabbed his arms, and stood him up; that they identified themselves as FBI agents, announced that he was under arrest, handcuffed him, and advised him that he was not required to make any statement and that any statement he did make "could, and would, be used against him in a court of law." Wee's further testimony was that a total of five agents entered Hill's room while the arrest was in progress; that after the arrest Hill was taken to FBI headquarters in Detroit, a distance of some five or six miles from the scene of the arrest; that on the way Hill made a verbal statement; [1] that they arrived there at 6:10 a.m., where Hill was photographed, fingerprinted, and given breakfast; that prior to undertaking any interrogation, he was told that he was allowed to have counsel; that Hill then said he wanted to make a statement, and didn't want a lawyer because "he was tired of running" and that "he knew that eventually he would be caught, and that now he was caught." Wee testified that he prepared and read the introductory paragraph of the statement to Hill and he was asked if he fully understood that paragraph; [2] and that the statement was taken by Wee in

---

1. It is by no means clear from the record whether Hill admitted complicity in the crime in his verbal statement, there being both a suggestion that he did and a later indication that he did not. In any event, his verbal statement was not received in evidence at his trial.

2. "I, John Thomas Hill make the following voluntary statement to William A. Sullivan and Palmer M. Wee who have identified themselves to me as Special Agents of the Federal Bureau of Investigation. No threats or promises have been made to me to in-

his own handwriting, except that Hill wrote out the last paragraph of the statement in his own handwriting. Wee testified that Hill was not covered by firearms when making the statement, nor was he then handcuffed. Wee further testified that the interrogation began at 7:05 a.m. and was completed at 9:00 a.m.

During the progress of the post conviction hearing, Judge Turnbull several times indicated belief that the confession was involuntary, stating at one point in the proceedings:

> "* * * that the description of — by the Defendant, which is corroborated by the statement read by the State, of one of the FBI agents, that there were five men in the room; all of them with revolvers, one with a sub-machine gun and one with a sawed off shot gun, is certainly enough to put this man in such a state of fear, that, in my opinion, it amounted to coercion of the statement."

The hearing judge further stated that "it would have been a different proposition if this statement would have been taken after he got out on bail, had an opportunity to consult an attorney;" but that "under the circumstances of this particular arrest, I think the arrest itself was such as to make the statement an involuntary one. * * *." Judge Turnbull stated during the hearing that he believed the testimony of Wee that Hill was advised of his rights, including his right to have a lawyer. At the conclusion of the case, the court delivered its oral opinion, in which it held:

> "* * * as I indicated at the time of the hearing of this case, the conduct of the FBI agents at the time of the arrest of this defendant was such that I think any reasonable person would be not only shocked but horrified. Bursting into this man's bedroom in the small hours of the morning; surrounding his bed with, as I

---

duce me to make this statement. I have been told that I am not required to make any statement. I have been advised of my right to an attorney and I have been told that any statement I do make may be used against me in a court of law."

recall, four FBI agents, all armed; forcing him, naked, to stand and be searched; taking him immediately thereafter to the FBI headquarters in Detroit and extracting from him under those circumstances a statement is, in my opinion, beyond the pale.

"* * * I do think that it would take a man with steel nerves to be able to withstand giving an incriminatory statement under circumstances of that kind."

In concluding that Hill's statement was involuntary, Judge Turnbull, in effect, disagreed with the explicit finding of voluntariness made by the trial judge at Hill's original trial. Hill did not testify as to the voluntariness of his statement at the trial, the only testimony on that question being provided by the State through Agent Wee, the substance of which was as above indicated. Wee was cross-examined by Hill's trial counsel, particularly with respect to the manner of effectuating the arrest, and he argued at that time "that the circumstances surrounding the obtaining of this statement were such as to indicate that it was not free and voluntary." The trial judge disagreed and the statement was received in evidence and read to the jury.

It appears clear that Judge Turnbull's belief that the circumstances of the arrest were "shocking" compelled him to conclude, as a matter of law, that Hill's confession was involuntary as having been coerced by fear stemming from the conditions under which the arrest was made. With that presumptive determination, we cannot agree. We do not believe that the conditions under which Hill was arrested were so inherently compulsive or coercive that his written confession, given at FBI headquarters several hours after his arrest, was necessarily irreconcilable with the possession of mental freedom and a free will.[3] Cf. *Ashcraft v. Tennessee,* 322 U. S. 143. We think the

3. We see nothing unreasonable in undertaking to apprehend a person charged by warrant with a violent murder in the early hours of the morning—a time when the suspect is likely to be asleep, his reaction time at its lowest level, and the danger to others at a minimum. Nor do we believe it unreasonable under the circumstances of this case that eight well armed FBI agents were assembled to make the arrest, since by such a show of strength the likelihood of opposition is minimized, and injury to all participants

standard by which the admissibility of Hill's pre-*Miranda*[4] statement is to be measured is whether, under the totality of all the attendant circumstances, the statement was given freely and voluntarily. *Clewis v. Texas,* 386 U. S. 707; *Taylor v. State,* 238 Md. 424; *McFadden v. State,* 1 Md. App. 511. More specifically, the constitutional inquiry is not whether the conduct of the officers in arresting Hill was shocking, but whether his confession was free and voluntary, *viz.,* whether it was extracted by any sort of threats, or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence. See *Malloy v. Hogan,* 378 U. S. 1 at page 7. Otherwise stated, the test of the admissibility of Hill's pre-*Miranda* confession is whether his will was overborne at the time that he confessed, *Haynes v. Washington,* 373 U. S. 503; or whether his confession was the product of a rational intellect and a free will, *Townsend v. Sain,* 372 U. S. 293; or whether his statement was "freely self-determined," *Rogers v. Richmond,* 365 U. S. 534. So that, as succinctly stated by the Court of Appeals in *Mundell v. State,* 244 Md. 91, the question is not whether the accused was frightened, but whether his dis-

---

in the arrest thus avoided. And under Maryland law, where officers are authorized to make an arrest, they may make a forcible entry without prior announcement of their purpose or demand for entry, where the making of such announcement or demand would likely frustrate the arrest, or increase the peril of the arresting officers. See *Henson v. State,* 236 Md. 518. While the apparent failure of the FBI agents to announce their purpose and demand entry before breaking into Hill's room may have rendered his arrest illegal under federal law, 18 U.S.C.A., Section 3109, that circumstance is not of itself determinative of the admissibility of a confession subsequently obtained when offered in evidence in a State criminal prosecution. *Crowe and Williston v. State,* 240 Md. 144; *Stewart v. State,* 232 Md. 318; *Prescoe v. State,* 231 Md. 486; *Boone v. State,* 2 Md. App. 80. Nothing in *Wong Sun v. United States,* 371 U. S. 471 commands a contrary result. See *McChan v. State,* 238 Md. 149.

4. The warnings required in *Miranda v. Arizona,* 384 U. S. 436, apply only to trials commencing after June 13, 1966, so that where, as here, the trial was long prior to that date, no particular warnings are necessary in order to find that the confession was free and voluntary under the totality of the circumstances. See *Cunningham v. State,* 247 Md. 404; *Magness v. State,* 2 Md. App. 320.

closures to the officers were freely and voluntarily made at a time when he knew and understood what he was saying. See also *Cooper v. State,* 1 Md. App. 190; *Koprivich v. State,* 1 Md. App. 147.

Hill did not testify that he confessed because of fear engendered in him by the arrest, but rather because, at FBI headquarters, the agents had guns on him, he was scared and thought they were going to kill him; and, for that reason, he signed the "petition" which he later ascertained to be a confession. Certainly, this testimony of Hill, if believed, would establish that his confession was not free and voluntary, but Judge Turnbull made no finding of fact regarding the truth of this testimony, nor of that of Agent Wee which, if believed, strongly indicated that Hill's confession was a voluntary one, and not the product of a will overborne. As there is very little factual dispute concerning the circumstances under which Hill was arrested, and since we hold that such circumstances, of themselves, do not constitute a sufficient predicate upon which to base a determination that Hill's confession was not freely and voluntarily given, we deem it necessary to remand the case for the purpose of having Judge Turnbull make specific findings (a) as to what part, if any, of Hill's version of the events transpiring at FBI headquarters, by reason of which Hill alleged that he was compelled to sign the "petition," is believed, and (b) as to what part, if any, of Agent Wee's testimonial version of such events transpiring at FBI headquarters is believed. When such findings have been made, we shall then be in a position to assess whether the evidence adduced at the post conviction hearing was sufficient to justify the lower court's finding that Hill's statement was involuntary.

On remand, Judge Turnbull may additionally wish to give further consideration to the question of whether Hill, by failing to raise the question of the voluntariness of his confession either on direct appeal, in his first post conviction proceeding, or in his state habeas corpus proceeding, waived that contention under the then applicable provisions of Section 645H of Article 27 of the Maryland Code (1957 Edition) and Maryland Rule

BK 48.[5] See *Kiah v. Warden,* 235 Md. 681. In this connection, we note that Hill's very able counsel argued at the post conviction hearing that he was relying for relief on *Wong Sun v. United States, supra* and *Escobedo v. Illinois,* 378 U. S. 478; and that since these cases had not been decided until after Hill's first post conviction petition was denied, he could not be deemed to have waived the protections afforded him by those decisions. While the court below made no direct ruling on this matter, we point out, *first,* that *Wong Sun* is not applicable in State criminal prosecutions (see Footnote 3 hereof) and, *second,* that *Escobedo* would afford no relief to Hill since he did not request, nor was he denied counsel prior to his interrogation, and he was, in fact, as found by Judge Turnbull, told of his right to remain silent prior to interrogation. See *Johnson v. State,* 238 Md. 140; *Mefford and Blackburn v. State,* 235 Md. 497; *Boone v. State, supra; Carrington v. State,* 1 Md. App. 353. It would appear clear, therefore, that no new test governing the admissibility or voluntariness of Hill's statement, from which he could benefit, has been evolved by the courts from the time of his conviction to the time of Judge Turnbull's decision. Of course, neither *Miranda* nor *Escobedo* are retroactive, *Johnson v. New Jersey,* 384 U. S. 719, so that the protections afforded by those decisions would, in no event, be available to Hill.

> *Application for leave to appeal granted: case remanded for further proceedings in accordance with this opinion.*

---

5. Section 645H was repealed by Chapter 442 of the Acts of 1965, and Maryland Rule BK 48 was amended, effective September 1, 1967.