513 A.2d 299

**Kenneth James LODOWSKI**

v.

**STATE of Maryland.**

**Nos. 154, 1, Sept. Term, 1983, 1984.**

Court of Appeals of Maryland.

Aug. 22, 1986.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, on the brief) Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Deborah K. Chasanow, Asst. Atty. Gen., on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH,* ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

ORTH, Judge.

In *Lodowski v. State*, 302 Md. 691, 490 A.2d 1228 (1985) (*Lodowski I*), we reversed the judgments of the Circuit Court for Charles County and remanded the case for a new trial. The Supreme Court of the United States vacated our judgment and remanded the case to us for further consideration in light of *Moran v. Burbine*, 475 U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). *Maryland v. Lodowski*, —— U.S. ——, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986). We now further consider the case as directed.

I

Lodowski had been convicted as a principal in the first degree of the murder in the first degree of Carlton Xavier Fletcher (count 1 of the indictment), as a principal in the second degree of the murder in the first degree of Minh Huong Phamdo (count 2), of the armed robbery of Phamdo (count 7), and with six offenses of conspiracy relating to those crimes (counts 3, 4, 5, 6, 8 and 9). He was sentenced to death on the conviction under the 1st count, to life imprisonment on each of the convictions under the 2nd, 5th,

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

and 6th counts, and to 20 years imprisonment under each of the 7th and 8th counts to run consecutively. The 3rd, 4th, and 9th counts were held to merge.

The reason for our reversal of these judgments centered on the admission at trial of three statements given to the police by Lodowski. The first statement was a written admission given at 11:00 p.m. on 14 June 1983. The second statement was an oral confession obtained as a result of an interrogation which began about 10:15 p.m. on 17 June 1983 and ended shortly after 6:00 a.m. the next morning. The third statement was a written admission which was obtained shortly after the oral confession was concluded. We focused on the third statement. 302 Md. at 712, 490 A.2d 1228. As required of us, we made an independent constitutional appraisal of the voluntariness of the third statement in the light of the facts and circumstances under which it was obtained. We accepted, as not clearly erroneous, the factual finding of the trial judge that Lodowski did not request a lawyer. We assumed for the purpose of decision that, prior to the making of the third statement, Lodowski was given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), with respect to the right to a lawyer and that he waived, for the nonce, the right in writing by answering "yes" to the question, "Are you willing to answer questions without having a lawyer with you now?" *Lodowski,* 302 Md. at 712–713, 490 A.2d 1228. We found in the record certain other relevant facts and circumstances surrounding the making of the statements which stood undisputed and unrefuted. We set them out as follows:

Lodowski was in custody at the police station from 10:00 p.m. on 17 June 1983, when the police informed him that he was under arrest, until noon the next day when he was taken before a Commissioner of the District Court. During that period interrogation of him produced two statements. One was an oral confession. As recounted by the officer to whom it was made, it covered the inception of the crimes, the planning of them, their execu-

tion, the disposition of the loot and the disposal of the murder weapons. Upon the completion of the oral confession, Lodowski was presented with a form on which was typed the following:

Kenneth you have advised me [the officer who received the oral statement] that you have information about the shooting/armed robbery that occurred at the Mini-Market on Greenbelt Rd. last Saturday evening. I would like for you to tell me about that incident.

The balance of that page and two additional pages bear a statement in Lodowski's handwriting. A fourth page is appended which according to the police, is a diagram showing where the murder weapons were thrown from the Woodrow Wilson Bridge into the Potomac River. The statement [designated by us as the "third statement"] bears the date "6–18–83" and the time "0618 Hrs." A police officer took possession of the statement around 11:00 a.m. on 18 June at which time he requested that Lodowski sign each of the first three pages. Lodowski did so, adding the notation "signed under protest."

About 6:15 a.m. on 18 June, Lodowski's mother, who was at the police station, was informed by the police that her son was a suspect. She immediately took steps to obtain the services of a lawyer. By 7:15 a.m. she had employed two lawyers to represent her son. The lawyers arrived at the police station at 8:10 a.m., identified themselves, and asked to see and consult with their client. The request was refused. From then until noon, when Lodowski was taken before a District Court Commissioner, they made persistent efforts without avail to obtain access to their client. They solicited the aid of the Public Defender, the State's Attorney for Prince George's County and a District Court judge. They prepared a petition for a writ of habeas corpus and obtained the agreement of the judge to hear it at noon.

The police made their position perfectly clear to the lawyers, to the State's Attorney and to the judge. Their position was that since Lodowski had waived his right to

counsel and had not asked for a lawyer, they were not going to allow the lawyers representing him to talk to him. The State's Attorney recounted what was told him at 9:45 a.m. when he made inquiry to the police about Lodowski. Lt. Robert Miller informed the State's Attorney that Lodowski "was being processed at that time, he had been advised of his rights by the Prince George's County Police Department, that he had not requested an attorney, and that they [the police] thought it was inappropriate to talk to counsel or to allow counsel to see Mr. Lodowski." When one of the lawyers telephoned the State's Attorney about 9:55 a.m. and asked to see his client, the State's Attorney said that he "thought the best thing would be to go ahead with his hearing [on the petition for the writ of habeas corpus], that we would have an attorney available at whatever time the Court wished to have an attorney available."

While the lawyers were attempting without success to see their client, Lodowski was writing the third statement. He was not informed by the police, nor was he aware, before he had completed the statement and signed it, that two lawyers retained by his mother to represent him were at the police station desperately attempting to see him so they could consult with him forthwith. *Id.* at 713–715, 490 A.2d 1228.

In those circumstances we thought that the admissibility of the third statement depended upon whether, in the contemplation of *Miranda,* the waiver of Lodowski's rights, guaranteed by the Fifth Amendment to the Constitution of the United States, was effective. *Id.* at 718–719, 490 A.2d 1228. We held that it was not. We were convinced that

the conduct of the police vitiated Lodowski's waiver of his right to counsel with respect to his third statement. Therefore that statement was rendered involuntary and inadmissible in the State's case in chief. *Id.* at 722, 490 A.2d 1228.

It was our view "that a suspect must be fully informed of the actual presence and availability of counsel who seeks to

confer with him, in order that any waiver of a right to counsel, as established by *Miranda,* can be knowing and intelligent." *Id.* at 721, 490 A.2d 1228. It turned out that a majority of the Justices of Supreme Court of the United States thought otherwise and made their views known in *Burbine.*

## II

The facts and circumstances of *Burbine* are accurately summarized in the syllabus to the opinion, 106 S.Ct. at 1136–1137:

After respondent [Brian K. Burbine] was arrested by the Cranston, Rhode Island, police in connection with a breaking and entering, the police obtained evidence suggesting that he might be responsible for the murder of a woman in Providence earlier that year. An officer telephoned the Providence police at approximately 6 p.m., and an hour later, Providence police officers arrived at the Cranston headquarters to question respondent about the murder. That same evening, unknown to respondent, his sister, who was unaware that respondent was then under suspicion for murder, telephoned the Public Defender's Office to obtain legal assistance for her brother on the burglary charge. At 8:15 p.m., an Assistant Public Defender telephoned the Cranston detective division, stated that she would act as respondent's counsel if the police intended to question him, and was informed that he would not be questioned further until the next day. The attorney was not informed that the Providence police were there or that respondent was a murder suspect. Less than an hour later, the Providence police began a series of interviews with respondent, giving him warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], before each session and obtaining three signed waivers from him prior to eliciting three signed statements admitting to the murder. At all relevant times, respondent was unaware of his sister's efforts to retain counsel and of the attorney's telephone call, but at

no time did he request an attorney. The state trial court denied his pretrial motion to suppress the statements, finding that he had validly waived his privilege against self-incrimination and his right to counsel. Respondent was convicted of first-degree murder, and the Rhode Island Supreme Court affirmed, rejecting the contention that the Fifth and Fourteenth Amendments required suppression of the statements. Respondent then unsuccessfully sought habeas corpus relief in Federal District Court, but the Court of Appeals reversed, holding that the police conduct in failing to inform respondent as to the attorney's call had fatally tainted his waivers of his Fifth Amendment privilege against self-incrimination and right to counsel.

See 106 S.Ct. at 1136–1137.

The facts surrounding the obtaining of the challenged statements in *Burbine* are sufficiently similar to the facts surrounding the obtaining of the statements in the instant case as to make the *Burbine* holdings with respect to federal constitutional provisions controlling.

### The Fifth Amendment—Self-Incrimination

Among the rights of an accused in criminal proceedings set out in the Fifth Amendment to the Constitution of the United States is that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." This guarantee, applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 3, 84 S.Ct. 1489, 1490, 12 L.Ed.2d 653 (1964), was the basis of the *Miranda* decision. *Burbine* casts light upon a concept of the Fifth Amendment guarantee heretofore so in the shadows as to be generally unnoticed, not only by us, but by a clear majority of the courts in other jurisdictions addressing the issue. *See Lodowski,* 302 Md. at 719–722, 490 A.2d 1228; *Burbine,* 106 S.Ct. at 1144–1145 (majority opinion), 1151–1152, 1158–1160 (Stevens, J., dissenting). *Burbine* held that the conduct of the police with respect to counsel for the suspect, whether reckless or deliberate, did not

render ineffective the waiver, otherwise proper, of the right to remain silent and to the presence of counsel. *Burbine,* 106 S.Ct. at 1141–1142. It found, in the face of the conduct of the police, that the waiver of the *Miranda* rights was voluntary in the sense that the waiver was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Id.* at 1142. And, although the majority characterized the conduct of the police as "distasteful," they refused to extend the *Miranda* decision to condemn that conduct as offensive to the Fifth Amendment. *Id.* at 1142–1143. Further, the Court was not prepared to adopt a rule requiring that the police inform a suspect of an attorney's efforts to reach him. *Id.* at 1143–1144.

Even though we do not find the Court's reasoning in arriving at these conclusions to be persuasive, we are nevertheless bound by its interpretation of the Federal Constitution. *See* Constitution of the United States, Art. VI; Declaration of Rights, Art. 2. As we have noted, the conduct of the police in obtaining the statement from Lodowski is not so distinguishable from the conduct of the police in obtaining the confessions from Burbine as to warrant our departure from the Supreme Court's interpretation of the Fifth Amendment's self-incrimination provision announced in *Burbine.* Therefore, in light of *Burbine,* assuming, but not deciding, that Lodowski's waiver of his *Miranda* rights to remain silent and to the presence of counsel was otherwise proper, we now hold that the waiver of the rights was not rendered ineffective under the Fifth Amendment by the failure of the police to inform him that counsel had been employed to represent him and were attempting to consult with him. *Compare In re Lucas F.,* 68 Md.App. 97, 510 A.2d 270 (1986).

### *The Sixth Amendment—Assistance of Counsel*

In *Lodowski I* we held that when the third statement was obtained from Lodowski he was not entitled to the assistance of counsel under the Sixth Amendment to the Constitution of the United States (applicable to the states

through the Fourteenth Amendment, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)) which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This was so, we said, because "the right is applicable only upon the initiation of adversary judicial criminal proceedings, and at the time the statement was obtained from Lodowski such proceedings had not been initiated...." 302 Md. at 716, 490 A.2d 1228 (citing *Webster v. State*, 299 Md. 581, 598–599 and 606, 474 A.2d 1305 (1984) and *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2300, 81 L.Ed.2d 146 (1984)). The Supreme Court reached the same conclusion with respect to Burbine, where also the events that led to the inculpatory statements preceded the formal initiation of adversary judicial proceedings. And it rejected the notion that custodial interrogations require a different rule. 106 S.Ct. at 1145–1147. Therefore, in light of *Burbine*, we adhere to our holding that Lodowski's waiver of his *Miranda* rights was not ineffective under the right to counsel provision of the Sixth Amendment.

### *The Fourteenth Amendment—Due Process of Law*

■ *Burbine* also disposed of the claim that the conduct of the police was so offensive as to deprive him of the fundamental fairness guaranteed by that clause of the Fourteenth Amendment which prohibits "any State" from depriving "any person of life, liberty, or property, without due process of law...." Burbine alleged that conveying false information to an attorney should be condemned as violative of canons fundamental to the "traditions and conscience of our people." 106 S.Ct. at 1147 (citations omitted). The Court held that, on the facts, "the challenged conduct falls short of the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Id.* at 1148. It left the door ajar, however:

We do not question that on facts more egregious than those presented here police deception might rise to a level of a due process violation. *Id.* at 1147.

Since the police conduct in *Burbine* regarding counsel was not sufficient to rise to a level of a federal constitution due process violation, we cannot say that similar police conduct with respect to Lodowski's counsel reached that level. There was no deception, conspiracy or collusion on the part of the police which prevented Lodowski's lawyers from reaching their client. As we noted in *Lodowski I:*

> The police made their position perfectly clear to the lawyers, to the State's Attorney and to the judge. Their position was that since Lodowski had waived his right to counsel and had not asked for a lawyer, they were not going to allow the lawyers representing him to talk to him. 302 Md. at 714, 490 A.2d 1228.

Those facts appear to be less egregious than the facts in *Burbine.* Therefore, in light of *Burbine,* we hold that the conduct of the police regarding Lodowski's counsel did not violate the due process guarantee of the Fourteenth Amendment.

The first question we posed to be briefed and argued before us on the remand of our *Lodowski v. State, supra,* by the Supreme Court was:

> Whether, under the decision of the Supreme Court in *Moran v. Burbine,* 475 U.S. [——, 106 S.Ct. 1135, 89 L.Ed.2d 410] (1986), this Court erred in holding, as a matter of federal constitutional law, that the third statement made by Kenneth James Lodowski to the police was inadmissible in evidence.

The answer to that question is yes.

### III

Although in light of *Burbine* there is no provision of the Federal Constitution which applies to render the admission of Lodowski's third statement inadmissible, the propriety of

its receipt in evidence is not thereby resolved. As we have noted, the Court in *Burbine* observed that "[n]othing we say today disables the States from adopting different requirements for the conduct of its employees and officials as a matter of state law." 106 S.Ct. at 1145. The organic law of Maryland set out in its Declaration of Rights contains provisions prohibiting compelled self-incrimination, Article 22; permitting the assistance of counsel in criminal prosecutions, Article 21; and guaranteeing due process of law, Article 24. The question is whether these declarations serve to render Lodowski's statement inadmissible even though comparable provisions of the Federal Constitution do not. Lodowski would have us so hold.

■ It is true that similar provisions within the Maryland and United States Constitutions are independent and separate from each other. *See Attorney General v. Waldron*, 289 Md. 683, 705, 426 A.2d 929 (1981) (quoted with approval in *Lawrence v. State*, 295 Md. 557, 561, 457 A.2d 1127 (1983)). Generally, however, comparable provisions of the two constitutions are deemed to be in *pari materia. See, e.g., Crawford v. State*, 285 Md. 431, 452 n. 3, 404 A.2d 244 (1979); *Richardson v. State*, 285 Md. 261, 265, 401 A.2d 1021 (1979); *State v. Panagoulis*, 253 Md. 699, 707 n. 3, 253 A.2d 877 (1969); *Brown v. State*, 233 Md. 288, 296, 196 A.2d 614 (1964); *Bass v. State*, 182 Md. 496, 500, 35 A.2d 155 (1943); *Blum v. State*, 94 Md. 375, 382, 51 A. 26 (1902). Here the relevant comparable provisions of the State and Federal Constitutions were adopted in times not far removed from each other. The first ten amendments to the Constitution of the United States, commonly known as the Bill of Rights, were all proposed by Congress on 25 September 1789, and declared ratified on 15 December 1791. Provisions comparable to the Fifth Amendment clauses concerning self-incrimination and due process of law and the Sixth Amendment clause concerning assistance of counsel appeared in the Declaration of Rights, Constitution of

Maryland (1776) and in each Constitution thereafter.[1] Thus, the concern with self-incrimination, assistance of counsel and due process of law was shared by those who framed the Federal Constitution and those who framed the Maryland Constitution. This concern on the part of the drafters of each constitution was implanted in the same climate and nurtured by the same hopes and fears. The provisions, so alike in aim and content, were proposed and accepted by those anxious to preserve the freedom and rights they had so arduously won. As stated in the preamble to the Declaration of Rights, the provisions were prompted by the People "grateful to Almighty God for [their] civil and religious liberty, and taking into [their] serious consideration the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof...." We cannot say, in the frame of reference here, that the Federal provisions and the State provisions are to be construed and applied differently. This view is amply supported by what we have said in the past.

(1)

Article 22 of the Maryland Declaration of Rights declares "[t]hat no man ought to be compelled to give evidence against himself in a criminal case." We said in *Blum v. State, supra,* 94 Md. at 382, 51 A. 26, that the Fifth Amendment was in *pari materia* with Article 22. We iterated this view in *Richardson v. State, supra,* 285 Md. at 265, 401 A.2d 244, stating that "the privilege against compelled self-incrimination in Article 22 ... has long been

---

**1.** *See* Declaration of Rights (1776), Articles XVII, XIX and XX; Declaration of Rights (1851), Articles 17, 19 and 20; Declaration of Rights (1864), Articles 19, 21 and 22; Declaration of Rights (1867), now Articles 21, 22 and 24.

The Fifth Amendment to the Constitution of the United States includes the provision: "No person shall be ... deprived of life, liberty, or property, without due process of law...." It is applicable to the federal government. The Fourteenth Amendment provision regarding due process of law, applicable to the states, was proposed by Congress on 13 June 1866 and declared ratified on 28 July 1868.

recognized as being in *pari materia* with its federal counterpart." *See also State v. Panagoulis, supra,* 253 Md. at 707 n. 3, 253 A.2d 877; *Brown v. State, supra,* 233 Md. at 296, 196 A.2d 614; *Bass v. State, supra,* 182 Md. at 500–501, 35 A.2d 155 (discussing the historical interplay between the Fourth and Fifth Amendments and Articles 22 and 26).

■ Lodowski urges that we diverge from the rationale of the holding in *Burbine* as to the Fifth Amendment and hold that under Article 22 his statement was inadmissible because the conduct of the police negated any ability he had to waive effectively his privilege against self-incrimination. He looks to *Marshall v. State,* 182 Md. 379, 383, 35 A.2d 115 (1943), which indicates that Article 22 "is an inhibition upon the government of the State of Maryland." More specifically, he argues, the State cannot, by legislation or process, "compel a prisoner to produce his property or compel him to testify against himself in a criminal case." *Id.* This quote, however, refers to both Article 22 and to the Fifth Amendment. The Court did not indicate that the protections afforded an accused by Article 22 were any greater or different than the rights guaranteed by the Fifth Amendment. We decline to deviate on a State level under Article 22 from the rationale of *Burbine* regarding the Fifth Amendment.

### (2)

■ Article 21 of the Maryland Declaration of Rights declares "[t]hat in all criminal prosecutions, every man hath a right ... to be allowed counsel...." We stated flatly in *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179 (1986): "There is no distinction between the right to counsel guaranteed by the Sixth Amendment and Article 21 of the Maryland Declaration of Rights...." We again set out this view in *Clark v. State,* 306 Md. 483, 487, 510 A.2d 243 (1986). Accordingly, with regard to the allowance of counsel provision of Article 21 of the Declaration of Rights, we adhere to the construction the Supreme Court has placed on the like provision of the Sixth Amendment.

(3)

■ Article 24 of the Maryland Declaration of Rights declares

[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

*See also* Article 19 of the Maryland Declaration of Rights which entitles "every man, for any injury done to him in his person or property, ... to have remedy by the course of the Law of the land, and ... to have justice and right ... according to the Law of the land." Article 24 is entitled "Due Process" and the phrase "Law of the land" was early on equated with the due process clause of the Fourteenth Amendment. *Wright v. Wright*, 2 Md. 429, 452 (1852) ("the words 'by the law of the land,' which are copied from *Magna Charta*, are understood to mean due process of law, according to the course and usage of the common law."). Article 24 and the Fourteenth Amendment have "long been recognized as a source of a right to counsel independent of the Sixth Amendment where critically important to the fairness of the proceedings." *Sites v. State*, 300 Md. 702, 716, 717, 481 A.2d 192 (1984) (citations omitted). *See Rutherford v. Rutherford*, 296 Md. 347, 363, 464 A.2d 228 (1983). Lodowski looks to *Sites* and *Rutherford* in suggesting that the "Law of the land" is broader than "due process of law," operating "to secure the right to counsel in circumstances where more conventional theories are technically inapplicable...." *Sites* held that pursuant to the dictates of due process, a person detained for driving while intoxicated "must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test...." 300 Md. at 717, 481 A.2d 192. *Rutherford* held that due process requires that "an indigent defendant in a civil contempt proceeding cannot be sentenced to actual incarceration unless counsel has been appointed to represent him or he has waived the right to counsel." 296

Md. at 363 (footnote omitted). There is no dispute here that Lodowski was entitled to counsel during his custodial interrogation resulting in the third statement. The issue is not one of entitlement to counsel but whether the right was effectively waived. Under *Burbine* the due process clause of the Fourteenth Amendment did not operate to vitiate Burbine's waiver, and we see nothing in *Sites* or *Rutherford* to compel a broader construction of the "Law of the land" clauses of Maryland's Declaration of Rights so as to vitiate a waiver otherwise proper. The second question we posed to be briefed and argued before us on the remand of our *Lodowski v. State, supra,* by the Supreme Court was:

Whether, if the third statement was admissible under federal constitutional law, it was inadmissible under the constitutional law of the State of Maryland.

The answer to that question is no.

## IV

The third question we posed on the remand to us was

[w]hether, if the third statement was admissible under federal and Maryland constitutional law, it was inadmissible under Maryland non-constitutional criminal law.

### (1)

Lodowski looks to the Public Defender statute, Md.Code (1957, 1983 Repl.Vol., 1985 Cum.Supp.) Art. 27A, §§ 1–14 as a part of the non-constitutional law of Maryland which precludes the admissibility of the statement. He argues that the statute "extends the right to counsel beyond those proceedings to which the Sixth Amendment is applicable." *See Webster v. State,* 299 Md. 581, 603–604, 474 A.2d 1305 (1984). In any event, there is no question that a defendant is *entitled* to the assistance of counsel at a custodial interrogation and that the Public Defender statute requires the Public Defender to provide indigent defendants legal assistance in such circumstance unless waived. *See Utt v. State,* 293 Md. 271, 286, 443 A.2d 582 (1982). We point out that the Public Defender statute did not apply to

Lodowski directly because, in fact, private counsel had been retained to represent him. Moreover, the statute cannot be applied to Lodowski indirectly because we see nothing in its provisions to indicate that police conduct which is not offensive constitutionally is condemned as a matter of legislative policy. In enacting the Public Defender statute the Legislature declared that it was "the policy of the State of Maryland to provide for the realization of *the constitutional guarantees* of counsel in the representation of indigents...." Art. 27A, § 1 (emphasis added). The police conduct here was not constitutionally offensive in light of *Burbine* and did not vitiate a waiver of Lodowski's right to counsel which was otherwise effective. The Public Defender Statute did not operate to make the waiver ineffective.

### (2)

We have determined that the admission of the third statement given by Lodowski was not repugnant to the right to the assistance of counsel guaranteed by the various Federal and State constitutional provisions and that, in the circumstances, Maryland's Public Defender statute was not to be construed to bar it. The question now is whether it was inadmissible on other grounds.

 In a criminal cause, when the prosecution introduces an extrajudicial confession or admission given by the defendant to the authorities during a custodial interrogation, the basic rule is that the prosecution must, *prima facie*, upon proper challenge, establish by a preponderance of the evidence that the statement was obtained (1) in conformance with the dictates of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and (2) voluntarily. We explained in *State v. Kidd,* 281 Md. 32, 37–38, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977):

the burden is on the State of proving that a confession or admission is voluntary in the traditional sense and that there has been compliance with the *Miranda* safeguards.

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession.... Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Jackson v. Denno,* 378 U.S. 368, 376–377, 84 S.Ct. 1774 [1780–1781, 12 L.Ed.2d 908] (1964). This determination must "appear from the record with unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639 [643, 17 L.Ed.2d 593] (1967). In Maryland, two steps are involved in this procedure, which is applicable to a case tried before a jury, *Day v. State,* 196 Md. 384, 399, 76 A.2d 729 (1950), and without a jury, *Ralph v. State,* 226 Md. 480, 487, 174 A.2d 163 (1961), *cert. denied,* 369 U.S. 813 [82 S.Ct. 689, 7 L.Ed.2d 613] (1962). The trier of fact passes on traditional voluntariness only after the judge, upon a hearing, out of the presence of the jury, has fully and independently resolved the issues against the accused. *Jackson v. Denno, supra,* 378 U.S. at 378 [84 S.Ct. at 1781]. *See Dempsey v. State,* 277 Md. 134, 143–146, 355 A.2d 455 (1976); *Gill v. State,* 265 Md. 350, 357–358, 289 A.2d 575 (1972); *Sabatini v. State,* 14 Md.App. 431, 449–451, 287 A.2d 511, *cert. denied,* 265 Md. 742 (1972); *Mulligan v. State,* 10 Md.App. 429, 431–433, 271 A.2d 385 (1970); *Murphy v. State,* 8 Md.App. 430, 436–437, 260 A.2d 357 (1970); *Barnhart v. State,* 5 Md. App. 222, 223–227, 246 A.2d 280 (1968). The federal constitutional test with respect to the judge's preliminary decision is that of a preponderance of the evidence, *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619 [30 L.Ed.2d 618] (1972), and the test with respect to a final determination by the trier of fact is beyond a reasonable doubt, *Linkins v. State,* 202 Md. 212, 223, 96 A.2d 246 (1953).

The two-step procedure outlined in *Kidd* was followed below upon Lodowski's motion to suppress the statements. In *Lodowski I* we assumed that the two requisites of voluntariness had been met because we believed that in any event Lodowski's waiver of his right to counsel was rendered ineffective by the conduct of the police. Now, however, *Burbine* indicates that our belief was ill-founded, and it is necessary for our independent constitutional appraisal as to the propriety of the receipt in evidence of the third statement that the record clearly show that the dictates of *Miranda* were in fact met and, if so, that the statement was voluntary in the traditional sense. The record before us is not sufficient to so show.

At the suppression hearing out of the presence of the jury on Lodowski's motion to suppress the three statements, the judge made only one finding of fact—that Lodowski did not at any time request a lawyer. We accepted that finding as not clearly erroneous. *Lodowski I,* 302 Md. at 711–712, 490 A.2d 1228. It seems that the judge viewed the issue as one grounded only on the Sixth Amendment and never addressed the other requisites of the statements' admissibility. He permitted all three statements to go before the jury. Like *Jackson v. Denno, supra:*

> This is not a case where the facts concerning the circumstances surrounding the confession are undisputed and the task is only to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards. 378 U.S. at 391, 84 S.Ct. at 1788.

In *Lodowski I* we pointed out certain conflicts in the evidence, for example

> it was disputed whether the waiver was signed on 17 June 1983 at 10:19 p.m. as the police indicated, or not until after 12:30 p.m. on 18 June as Lodowski maintained, so as to be after both the oral confession and the third statement were given. The evidence differs as to what Lodowski and his mother were told from time to time by the police as to Lodowski's status as a suspect or a

witness and his need for an attorney. Due to the length of the interrogation and the tactics employed by the police, it was disputed whether Lodowski was capable of freely and knowingly waiving his rights. A psychiatrist, offered as an expert witness, gave his opinion, based upon a personal examination of Lodowski, the oral confession, the testimony he heard in court, and Lodowski's "sleep deprivation state" when the confession was made. He opined that the confession was not the product of Lodowski's unconstrained choice. 302 Md. at 724, 490 A.2d 1228.

We noted that none of these matters was resolved by factual findings of the trial judge, and we asserted that "[s]uch findings are necessary for our independent constitutional appraisal of the voluntariness of the confession." *Id.* We must remand the case to the trial court so that the record may show "with unmistakable clarity" the judge's determination as to voluntariness, including compliance with Miranda's dictates, of each of the statements proffered by the State and the factual findings on which the determination is based.

As to each of the statements which the State seeks to introduce,[2] the judge must determine whether *Miranda* applies, and, if it does, whether the warnings were given, and, if so, whether the rights were effectively waived. If he determines that there was compliance with the *Miranda*

---

2. In *Lodowski v. State,* 302 Md. 691, 490 A.2d 1228 (1985) (*Lodowski I*), we did not decide the admissibility of the first or second statements. We said that the voluntariness of the first statement
 depends primarily upon whether it was the product of a custodial interrogation. "Volunteered statements of any kind are not barred by the Fifth Amendment...." *Miranda* [*v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) ]. The hearing judge made no factual finding whether the first statement was volunteered or was extracted after an effective waiver by an interrogation while Lodowski was in custody. 302 Md. at 724, 236 A.2d 27.
 As stated *supra,* we pointed out the "numerous conflicts in the evidence with respect to the circumstances under which [the second statement] was obtained," and that "none of these matters were resolved by factual findings of the hearing judge." *Id.*

dictates, the judge must ascertain whether each statement was voluntary in the traditional sense. A statement may be submitted to the jury only on a *prima facie* finding that it was voluntary.

The standard under which traditional voluntariness is to be measured is whether, under the totality of all of the attendant circumstances, the statement was given freely and voluntarily. Judge Murphy, then Chief Judge of the Court of Special Appeals and now Chief Judge of this Court, set out the specifics of the test for traditional voluntariness in *State v. Hill*, 2 Md.App. 594, 601–602, 236 A.2d 27 (1967):

> [T]he constitutional inquiry is not whether the conduct of [the authorities] was shocking, but whether [the accused's] confession was free and voluntary, *viz.*, whether it was extracted by any sort of threats, or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence.... Otherwise stated, the test of the admissibility of [a] confession is whether [the accused's] will was overborne at the time he confessed ...; or whether his confession was the product of a rational intellect and a free will ...; or whether his statement was "freely self-determined,".... So that ... the question is not whether the accused was frightened, but whether his disclosures to the officers were freely and voluntarily made at a time when he knew and understood what he was saying. (citations omitted)

In a number of cases before *Miranda* we spelled out the factors to be considered in assessing the totality of the circumstances surrounding the confession. For example, the defendant's physical condition, *Hadder v. State*, 238 Md. 341, 209 A.2d 70 (1965); promises of official help and threat of a long sentence, *Streams v. State*, 238 Md. 278, 208 A.2d 614 (1965); the defendant's age and lack of mental capacity, *Streams, supra,* and *Green v. State*, 236 Md. 334, 203 A.2d 870 (1964); undue long periods of interrogation and "persistent hammering by relays of officers," *Medford and*

*Blackburn v. State,* 235 Md. 497, 512, 201 A.2d 824 (1964), *cert. denied,* 380 U.S. 937, 85 S.Ct. 944, 13 L.Ed.2d 825 (1965); physical mistreatment, including depriving a prisoner of food, drink or rest, *Medford, supra,* and *Bean v. State,* 234 Md. 432, 199 A.2d 773 (1964); various characteristics of the defendant, such as "age, intelligence, education, race, experience and suggestability and liability of intimidation," *Green,* 236 Md. at 339, 203 A.2d 870; unlawful arrest, *Prescoe v. State,* 231 Md. 486, 191 A.2d 226 (1963); defendant's use of narcotics, *Bryant v. State,* 229 Md. 531, 185 A.2d 190 (1962); threat and inducement, *Kier v. State,* 213 Md. 556, 132 A.2d 494 (1957) and *Edwards v. State,* 194 Md. 387, 71 A.2d 487 (1950).

In Maryland, a defendant's request for and access to counsel has always been one factor of many to be considered in determining the traditional voluntariness of a confession. *See, e.g., Mundell v. State,* 244 Md. 91, 223 A.2d 184 (1966); *Westfall v. State,* 243 Md. 413, 221 A.2d 646 (1966); *Miller v. State,* 231 Md. 158, 189 A.2d 118 (1963); *Jones v. State,* 229 Md. 165, 182 A.2d 784 (1962); *Hyde v. State,* 228 Md. 209, 179 A.2d 421 (1962), *cert. denied,* 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); *Presley v. State,* 224 Md. 550, 168 A.2d 510 (1961); *cert. denied,* 368 U.S. 957, 82 S.Ct. 399, 7 L.Ed.2d 389 (1962); *Linkins v. State,* 202 Md. 212, 96 A.2d 246 (1953); *Day v. State,* 196 Md. 384, 76 A.2d 729 (1950); *Jones v. State,* 188 Md. 263, 52 A.2d 484 (1947).

"*Miranda* impressed procedural safeguards on the traditional test of voluntariness." *State v. Kidd,* 281 Md. at 36, 375 A.2d 1105. The safeguards are warnings to be given. They are not in themselves rights protected by the Constitution but are prophylactic rules created by judicial decision to safeguard the Fifth Amendment prohibition against compulsory self-incrimination. *Id.* at 36–37, 375 A.2d 1105.

## V

Inasmuch as we are unable to determine on the record before us whether any of the three statements admitted in

evidence met the test of voluntariness, the question is what procedure should be followed to obtain a record sufficient for us to make the independent constitutional appraisal required. A sufficient record may be obtained only by a remand to the trial court so the judge may announce the necessary factual findings and his determination of voluntariness based thereon. The State suggests that the judge may make the factual findings from the already established record so that a further suppression hearing is not necessary. In the alternative it would have the judge conduct a new plenary suppression hearing. If, upon that hearing, the judge determines that the statements are voluntary, the judgments would stand without a new trial. We reject both of these suggestions. It is true that in circumstances similar to those here, Supreme Court decisions permit another suppression hearing without a new trial. *Sims v. Georgia, supra; Jackson v. Denno, supra.* In *Jackson* the Supreme Court noted that the State, if it so desired, was

> free to give Jackson a new trial ..., but for us to impose the requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration and the proper relationship between federal and state courts. 378 U.S. at 395, 84 S.Ct. at 1790.

*See also Pinto v. Pierce,* 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31, *reh. denied,* 389 U.S. 997, 88 S.Ct. 462, 19 L.Ed.2d 499 (1967) (per curiam); *Boles v. Stevenson,* 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

 This Court, however, has concluded that when a hearing on the suppression of a statement or confession is inadequate, the defendant is entitled not only to a new hearing but also to a new trial. We made our position perfectly clear in *Gill v. State,* 265 Md. 350, 289 A.2d 575 (1972):

> [W]e hold that while [the Maryland Rule providing for a remand without affirming, reversing or modifying the judgment from which the appeal was taken] may be

suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself. The admissibility of a confession is always an integral part of the trial. This is not only true of the confession, per se, but also encompasses the entire process of ascertaining, prima facie, that it was legally obtained. *Id.* at 357, 289 A.2d 575 (footnote omitted).

In stating that this holding was applicable to both a court and a jury trial, we observed:

Since the appellant here was tried by the court without a jury, [the trial judge's] sole duty when he considered receiving the confession was to determine if there was prima facie proof of its voluntariness. However, once the statement was received, the judge re-assumed his role as trier of fact which is no different than a jury's role. While it is unnecessary that he rehear the testimony concerning the manner in which the confession was obtained, that evidence should be reviewed by him in his fact finding role, taking into account all the testimony presented during the trial. He should then digest all the various pieces of the complete puzzle in the totality of his function as trier of fact and decide if the inculpatory statement was voluntary beyond a reasonable doubt. Just as with the jury, if the judge concludes the confession was voluntary he should again consider it together with all the other evidence as a composite whole before making the ultimate determination of whether the accused is guilty or innocent. Similarly, if he finds the statement was not the free expression of the suspect he must disregard it in arriving at a verdict. *State v. Hutchinson*, 260 Md. 227, 234, 271 A.2d 641 (1970); *Ralph v. State*, 226 Md. 480, 174 A.2d 163 (1961). It must be obvious that in a remand for a limited purpose the trial court is not able to consider the new testimony in one of its two roles. 265 Md. at 359, 289 A.2d 575.

*See Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976).[3] It follows that neither the State's urging that the case be remanded to permit the trial judge to make findings from the already established record nor its alternative suggestion that there simply be another plenary suppression hearing without a reversal of the judgments and the grant of a new trial unless the statements are *prima facie* found to be inadmissible comports with *Gill.* Lodowski is not only entitled to a new plenary suppression hearing at which the trial judge shall make factual findings with respect to the *Miranda* warnings and the *prima facie* admissibility of the three statements pursuant to the traditional voluntariness standard, but he is also entitled to a new trial whether or not the statements are found to be admissible.

## VI

So it is that although *Burbine* lights a new path to be followed, we end at the same place we reached in *Lodowski I:* the judgments are reversed and the case is remanded to the Circuit Court for Charles County for a further suppression hearing and a new trial.

In *Lodowski I* we held that the indictment returned against Lodowski by the Grand Jury for Prince George's County was valid, and that the indictment was properly removed for trial to the Circuit Court for Charles County. We said that these holdings were the law of the case, and, as such, were conclusive and may not be relitigated at a new trial. 302 Md. at 700–710, 749–750, 490 A.2d 1228.

---

**3.** This Court has permitted limited remands in certain instances. *See, e.g., Reid v. State,* 305 Md. 9, 501 A.2d 436 (1985) (limited remand to determine authenticity of two letters submitted by death penalty defendant as to his good character); *Bailey v. State,* 303 Md. 650, 496 A.2d 665 (1985) (discovery violation); *Warrick v. State,* 302 Md. 162, 486 A.2d 189 (1985) (discovery violation); *Mahammitt v. State,* 299 Md. 82, 472 A.2d 477 (1984) (180 day rule); *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981) (determination as to whether defendant received effective assistance of counsel).

This holds true as to any future trial of Lodowski on the indictment. *Burbine* does not affect those holdings.

In *Lodowski I* we also expressed certain views by way of *obiter dictum* for the guidance of the court below on retrial. With respect to the guilt stage of the trial we said that the admissibility *vel non* of testimony of one Kenneth Ferber concerning the solicitation of him by Lodowski to participate in the commission of a crime requires factual findings by the trial judge in the light of the law regarding the applicability of such evidence. 302 Md. at 725–729, 750–751, 490 A.2d 588. With respect to the punishment stage of the trial, as to aggravating circumstances, we said that the trial judge clearly erred in finding that Fletcher was killed while in the performance of his duties as a law enforcement officer. 302 Md. at 729–735, 751, 490 A.2d 1228. We also indicated that victim impact evidence is not constitutionally proscribed, is relevant to a determination of the sentence to be imposed, and is obtainable, among other means, through live testimony in open court at the discretion of the trial judge. 302 Md. at 735–749, 751–752, 490 A.2d 1228. We hold fast to those views as *Burbine* casts no light upon them.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS IN ACCORD WITH THIS OPINION; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

COLE, Judge, concurring.

I concur in the judgment.

RODOWSKY, Judge, concurring.

I concur in the judgment and, with the exception of Part II, "The Fifth Amendment—Self-Incrimination," I join in the opinion.